## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND

**JEFFREY A. ALTENBURG**
11810 Triadelphia Rd.
Ellicott City, MD  21042

AND

**JUDY WOOD**
3339 Ady Road
Street, MD  21154-1607

Case No: 16-3374

*On Behalf of a Class of Similarly
Situated Persons*

Plaintiffs

v.

**JURY DEMAND**

**CALIBER HOME LOANS, INC.**
650 Madison Ave.
New York, NY

AND

**U.S. BANK, NA SOLELY IN ITS
CAPACITY AS TRUSTEE FOR LSF9
MASTER PARTICIPATION TRUST**
300 Delaware Avenue, 9th Floor
Wilmington, DE  19801

Defendants

## CLASS ACTION COMPLAINT

Plaintiff Jeffrey A. Altenburg and Judy Wood ("Altenburg," "Wood," or

collectively "Named Plaintiffs"), on their individual behalf and on behalf of a Class of

similarly situated persons, through their attorneys Phillip R. Robinson and the Consumer

1

Law Center LLC, hereby brings this Class Action Complaint and Jury Demand against Defendant Caliber Home Loans ("Caliber") and U.S. Bank, NA solely in its capacity as Trustee for LSF9 Master Participation Trust ("LSF9")(collectively "Defendants") and in support thereof state:

## I. INTRODUCTION

1.     The claims outlined herein exemplify certain predatory and deceptive and debt collection practices which have garnered headlines and damaged the economy for the past several years in which certain so-called professionals flout the law and which have embroiled Altenburg, Wood, and the putative Class they seek to represent, who continue to suffer damage and losses directly and proximately caused by the Defendants' unsafe and unsound debt collection practices related to the collection of defaulted, consumer debts as well as a class of similar consumer debts across the state.

2.     Specifically, Caliber has knowingly collected or attempted to collect from Altenburg, Wood, and the putative Class of persons they seek to represent on behalf of LSF9, an unlicensed, collection agency, throughout the State of Maryland who may not collect or attempt to collect consumer debts while not licensed.  Caliber and LSF9 know the law and since 2007 the law has been clear that in order for a collection agency to collect or attempt to collect in the State of Maryland either directly or indirectly it must be licensed pursuant to Md. Code Ann., Bus. Reg. § 7-301.

3.     Further, a person who is required to be licensed as a collection agency may not shield its collection activities through persons like Caliber who are required to have a

separate license; all efforts to argue such an exemption under Maryland law have been rejected.

4.      By unfairly and deceptively aiding and assisting an unlicensed collection agency in the State of Maryland, as described herein, Caliber has further violated its duty of good faith and fair dealing pursuant to its own license by the State of Maryland (which it may not lend to any other person or entity) in connection with the servicing of mortgage loans. Md. Code Regs. 09.03.06.20. By acting as an unlicensed collection agency, LSF9 has committed a crime under Maryland law. Md. Code Ann., Bus. Reg. § 7-401: A person acting as an unlicensed collection agency "who violates this section is guilty of a misdemeanor, and on conviction, is subject to a fine not exceeding $1,000 or imprisonment not exceeding 6 months or both."

5.      As a direct and proximate result of Caliber's and LSF9's attempts to collect consumer debts from them, Altenburg, Wood, and the putative Class of persons they represent have been damaged and harmed by: (i) the Defendants knowingly claiming sums due from Altenburg, Wood, and the putative Class of members that may not be legally collected, (ii) LSF9 utilizing the courts to give the false appearance that a court has authorized it's illegal practices; (iii) incurring fees and costs in order to dispute Caliber and LSF9's false and misleading attempts to collect from them; and (v) recording documents in land records and court records demanding payments on behalf of unlicensed collection agencies.  In addition, Altenburg, Wood, and the putative Class of persons are entitled to statutory damages for Defendants' violations of certain of the claims before the Court in this action.

## II.  PARTIES

6.      Jeffrey A. Altenburg is a resident of the State of Maryland and an owner of the real property commonly known as 11810 Triadelphia Rd., Ellicott City, MD  21042 ("the Altenburg Property").

7.      Judy Wood, f/k/a Judy Blachowicz, formally owned the real property known as 20 Talister Court in Baltimore County, Maryland ("Wood Property") which was previously her home and property before a foreclosure sale which occurred on December 31, 2014 at 9:00AM.

8.      Defendant LSF9 is a Delaware Statutory Trust and no publically-held corporation owns 10%  or more of LSF9.  In addition:

        a.  LSF9 is part of a large family of private equity funds acquired and owned by Lone Star Funds ("Lone Star"), a leading private equity firm, which has organized sixteen private equity funds (the "Funds") that are (i) structured as closed-end, private-equity limited partnerships and (ii) include limited partners such as corporate and public pension funds, sovereign wealth funds, university endowments, foundations, fund of funds and high net worth individuals.[1]

---

[1]    *See*   "About   Lone   Star   Funds"   description   available   at http://www.lonestarfunds.com/about-us/ (last visited May 4, 2016); "About Lone Star" description   from   Hudson   Advisors   LP   available   at   http://www.hudson-advisors.com/about-lone-star/ (last visited May 4, 2015); "Lone Star Fund IX" description available at http://www.lonestarfunds.com/funds-raised/capital-growth/lone-star-fund-ix/ (last visited May 4, 2016).  *See also* Hudson America L.P., Part 2A of Form ADV, the Brochure (dated Maryland 30, 2016) available at http://www.adviserinfo.sec.gov/ as part of Hudson's legally required filings as a Registered Advisor with the SEC (last visited May

b.  LSF9 is exclusively and entirely managed by Hudson Advisors L.P. which

performs due diligence and analysis, asset management, and other support

services for LSF9 and the assets acquired by LSF9 (including the Altenburg's

putative and Wood's loans and the loan of the putative Class Members).[2]

While U.S. Bank is named as the trustee for LSF9 it has no management

responsibilities for LSF9 and does not govern its affairs whatsoever.

_____

3, 2016) at Page 3 (Hudson "and [its] affiliates "provide investment advisory and related services to a family of closed-end, privately-offered funds (the "Funds")…[including] Lone Star Fund IX"); Page 4 ("The Funds [including LSF9] invest in a broad range of financial and other investment assets, subject to the terms of each Fund's Offering Documents. These assets include, but are not limited to…single family residential real estate-secured debt…and consumer debt"); Pages 13-14 ("the Funds' [including LCF9] opportunistic investment strategy focuses on the expected returns of each potential investment on an individual basis"); Page 14 ("The Funds may make investments in secured and unsecured non-performing loans or other troubled assets that involve a significant degree of legal and financial risk and, particularly in the international context, political risks").

[2] Hudson America L.P., Part 2A of Form ADV, the Brochure (dated March 30, 2016) available at http://www.adviserinfo.sec.gov/ as part of Hudson's legally required filings as a Registered Advisor with the SEC (last visited May 3, 2016) at Page 3 (Hudson "and [its] affiliates "provide investment advisory and related services to a family of closed-end, privately-offered funds (the "Funds")…[including] Lone Star Fund IX"); Lone Star Americas Acquisitions, LLC, Part 2A of Form ADV, the Brochure (March 30, 2016) (available at available at http://www.adviserinfo.sec.gov/ as part of Hudson's legally required filings as a Registered Advisor with the SEC (last visited May 3, 2016) at Page 5 ("Lone Star and Hudson work closely together throughout the life of an investment, providing coordinated investment management services. In connection with the acquisition of an investment, Hudson typically develops an initial business plan for the ongoing management of the investment, consistent with the Investment Committee Memorandum (each, a "Business Plan"). After an investment has been closed and integrated into Hudson's asset management program, **Hudson performs ongoing day-to-day asset management of the investment consistent with the Business Plan**. Lone Star provides strategic and other related advice regarding investments held by the Funds")(emphasis added).

c.  As a regular part of its business, LSF9 acquires defaulted debts,[3] just like the

LSF9's debts subject to these proceedings, for less than the (i) value of the

real estate secured by the debt and (ii) the sum loan balance.[4]  In other words,

LSF9 is a consumer debt purchaser who acquires defaulted consumer debts

for pennies on the dollar.

---

[3] New Mexico Educational Retirement Board Investment Committee Meeting Minutes for March 14, 2014 at Page 3("Lone Star is a private equity firm headed by John Grayken. They invest in distressed assets globally, mostly real estate oriented.  Lone Star IX will focus on noncommercial real estate loans…These investments include distressed whole loans [and] nonperforming loans…") (available at https://www.nmerb.org/pdfs/icminutes032014.pdf) (last visited May 4, 2016).

[4] *See e.g.* "Fannie Mae Announces Winning Bids for its Second Sale of Non-Performing Loans," Fannie Mae Press Release dated August 20, 2015 (available at http://www.fanniemae.com/portal/about-us/media/financial-news/2015/6281.html)(last visited May 4, 2016) (announcing that LSF9's affiliate, Lone Star Mortgage Holdings, LLC, was the winning bidder for two pools of non-performing Fannie Mae loans offered by Fannie Mae for sale for nearly half of the claims unpaid balances for one pool and the "average delinquency of the loans was approximately 37 months with an average [Broker Price Opinion Loan to Value] of 76%");

Report to the Commissioner on FHA Single Family Loan Sales (Data as of February 6, 2015), U.S. Department of Housing and Urban Development, Federal Housing Development (available at http://portal.hud.gov/hudportal/documents/huddoc?id=sale.report.pdf)(last visited May 4, 2016) at Pages 1 & 8 (identifying Lone Star as the purchaser of the largest volume of loans purchased in "National sales" by the FHA of defaulted FHA mortgage loans have been typically offered from 40% to 60% of the unpaid principal balance of the loans).  *See also* "Lone Star Wins $3.8 Billion of Bad FHA Loans at Auction," Bloomberg News (June 20, 2014)(available at http://www.bloomberg.com/news/articles/2014-06-20/lone-star-wins-3-8-billion-of-bad-fha-loans-at-auction)(last visited May 4, 2016); "Lone Star Collects Quick $5.7B So Far for Fund IX," The Wall Street Journal (April 11, 2014)(available at http://blogs.wsj.com/privateequity/2014/04/11/lone-star-collects-quick-5-7b-so-far-for-fund-ix/)(last visited May 4, 2016).

9.     Defendant Caliber is the debt collector for LSF9 which is the owner of Altenburg's loan subject to this action.  Caliber has served in this capacity on behalf of LSF9 since about July 10, 2014.  LSF9 has delegated and assigned all duties related to Named Plaintiffs' loans (and the loans of the class members) to Caliber as its authorized agent on its behalf.  These duties include the retention of attorneys/substitute trustees and other collection agencies to initiate foreclosures and assert proceedings against Maryland residents.  Caliber also acts as LSF9's Attorney-in-Fact as part of LSF9's and Caliber's regular and routine collection practices.

10.     Not named as Defendants in this action, the law firm of McCabe, Weisberg & Conway, LLC and its attorneys/substitute trustees, including Laura O'Sullivan, Erin Shaffer, Chasity Brown, Lauren Bush, Rachel Kiefer, and Porschia Poindexter (collectively "McCabe"), were retained by LSF9 and Caliber to collect from Altenburg in litigation in the Circuit Court for Howard County, Maryland.

11.     Not named as Defendants in this action, the law firm of the Alba Law Group, P.A. and its attorneys/substitute trustees, including Jason Matthers, Christine Drexel, Thomas Dore, Mark Devan, Gerald Miles, Jr., and Erin Gloth (collectively "Alba"), were retained by LSF9 and Caliber to collect from Wood in litigation in the Circuit Court for Baltimore County, Maryland.

12.     Not named as Defendant in this action, a collection agency, SIMM Associates, Inc. ("SIMM"), was retained by Caliber to collect from Wood by making written demand(s) on Caliber's behalf utilizing interstate mail.

### III.  JURISDICTION & VENUE

13.     This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 since certain of the claims asserted herein arise under the laws of the United States.  Further, the Court may elect to retain supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.A. § 1367 since those claims are so related to the federal claims asserted herein that they form part of the same case and controversy.

14.     This Court has jurisdiction asserted because the Defendants transact business, perform work, have interests in real property, and provides services in Maryland.

15.     Venue is appropriate in this Court pursuant to 28 U.S.C.A. § 1391 because a substantial portion part of the events or omissions giving rise to the claims before the Court, related to the Named Plaintiffs and Defendants, occurred in this District.

## IV. FACTS

### A.     ADDITIONAL BACKGROUND ON THE DEFENDANTS

16.      This case involves a new industry which has entered the field of consumer debt collection since the financial crisis which began.  Specifically, this industry of Wall Street related hedge funds have acquired hundreds and thousands of defaulted, consumer loans, which are non-performing and otherwise in default, for pennies on the dollar of what is claimed due and owing from consumers.  Multiple public interest and media organizations have reported irregularities related to this industry including the following:

      a.  The New York Times has reported, "Lone Star Funds, a $60 billion private equity firm founded in 1995 by John Grayken. In just a few years, Lone Star's mortgage servicing firm, Caliber Home Loans, has grown from a bit player to a major force in the market for distressed mortgages.  An examination by

The New York Times of housing data and court filings, as well as interviews with borrowers, lawyers and housing advocates, revealed a pattern of complaints that Lone Star was quick to begin foreclosure proceedings, whether the firm had bought a delinquent mortgage at a federal auction or directly from a bank." *As Banks Retreat, Private Equity Rushes to Buy Troubled Home Mortgages* (9/28/2015)(available at http://www.nytimes.com/2015/09/29/business/dealbook/as-banks-retreat-private-equity-rushes-to-buy-troubled-home-mortgages.html)(last visited October 2, 2016).

b.  The National Consumer Law Center reports "Caliber, a servicer acting for one of the largest purchasers at DASP sales, offers five year 'interest only' payment plans. These plans lull borrowers with a teaser payment that will eventually convert to a level at least as high as the previously unaffordable payment and include a huge balloon payment due for all earlier unpaid amounts. Calling these types of offers 'modifications' of the mortgage is deceptive." *OPPORTUNITY DENIED How HUD's Note Sale Program Deprives Homeowners of the Basic Benefits of Their Government-Insured Loans,* National Consumer Law Center (May 2016) at Page 34 (available online at https://www.nclc.org/images/pdf/pr-reports/opportunity-denied-report.pdf)(last visited October 2, 2016).

c.  The Center for Popular Democracy reports that "The approach to modifications taken by Caliber Home Loans, a subsidiary of Lone Star

Funds, does not appear to prioritize sustainable relief to struggling homeowners.  Nor does it seem that Caliber passes on enough of the benefits of buying these loans at a discount to homeowners or communities. In multiple cases, Caliber has offered principal forbearance instead of principal reduction, despite the fact that Caliber bought the loans for less than the unpaid principal balance. Principal forbearance creates a balloon payment that has to be paid if the home is sold, the loan refinanced, or when the loan matures, which can make it difficult for homeowners to refinance or sell if they need to. Additionally, Caliber often offers temporary loan modification terms with 'five-year interest-only;' these terms meant that homeowners are not paying down principal at all and will owe as much after five years of payments as they did when they began the process"  (footnote omitted).  *Do Hedge Funds Make Good Neighbors? How Fannie Mae, Freddie Mac & HUD are Selling Off Our Neighborhoods to Wall Street,* Center for Popular Democracy (June 2015)(available at https://populardemocracy.org/sites/default/files/Housing-report_web-final.pdf)(last visited October 2, 2016).

17.     Caliber and LSF 9 is also subject to multiple public complaints by consumers and regulators which demonstrate Caliber and LSF9 have knowledge of certain of the issues raised in this matter related to its pattern and practices.  Examples of these include:

    a.  The New York Department of Financial Services is investigating Caliber's and LSF9's handling of distressed mortgages.  *See Caliber Said to Be Asked*

*for Data on Handling Distressed Mortgages*, New York Times (published 9/24/2016)(available at http://www.nytimes.com/2016/09/24/business/dealbook/caliber-said-to-be-asked-for-data-on-handling-distressed-mortgages.html?_r=0) (last visited October 2, 2016).

b. As of October 2, 2016, the Consumer Financial Protection Bureau's complaint database included approximately 1,837 consumer complaints involving Caliber's mortgage servicing practices including those practices on behalf of LSF9. Included in these complaints are more than 65 from Maryland residents in the last three years. These complaints are publically available at https://data.consumerfinance.gov/dataset/Consumer-Complaints/s6ew-h6mp.

**B.    FACTS ABOUT NAMED PLAINTIFF ALTENBURG**

18.    On or about March 30, 2007 Altenburg refinanced the Altenburg Property, his home and property, with Bank of America, NA ("Altenburg Loan"). He refinanced the loan for the purpose of making home improvements changing the learn terms. The proceeds of this refinance were used entirely for these personal, consumer purposes.

19.    Due to a reduction of household income and Altenburg's divorce, payments on the Altenburg Loan were not made and the Altenburg Loan became in default.

20.     LSF9 and Caliber have affirmed under penalties of perjury in testimony before the Circuit Court for Howard County that the date of default for the Altenburg Loan on October 2, 2011.

21.     While the Altenburg Loan was in default Caliber acquired all servicing rights related to its primary work and practice of servicing the defaulted loans acquired by LSF9 and its affiliates.

22.     While the Altenburg Loan was in default LSF9 acquired all rights to and ownership of the Altenburg Loan on or about July 29, 2015.  In the Circuit Court for Howard County, Maryland, McCabe stipulated, with the specific authority of LSF9 and Caliber, to the following fact: "LSF9 Master Participation Trust ('LSF9') acquired the Promissory Note ('Note') secured by the Deed of Trust that is the subject to this action for a sum less than the total amount remaining due on the Note on the date on which LSF9 acquired the Note." Exhibit 1.

23.     At no time did any person directly affiliated with LSF9 or acting on its behalf ever disclose to Altenburg that it was not licensed as a Maryland collection agency.

24.     Because McCabe, Caliber, and LSF9 concealed from him that LSF9 was not licensed as a collection agency and as an unlicensed, so-called professional, LSF9 had no legal right to demand any sums, directly or indirectly, Altenburg did not know until a period of less than one year before the commencement of this action that LSF9 was acting illegally under Maryland and Federal law.

25.     Without the right to do so, McCabe commenced a foreclosure action against Altenburg in the Circuit Court for Howard County, Maryland on March 9, 2016 (Case No.

13-C-16106882)("Altenburg Litigation") for the purpose of collecting upon the Altenburg

Loan from Altenburg on behalf of LSF9. Caliber assisted McCabe's collection attempt by

providing misleading and incorrect affidavit testimony in the Altenburg Litigation.

26.     In response and in reliance to McCabe's action and the Altenburg Litigation, which

was filed for the purpose of collecting from him indirectly on behalf of LSF9, and pursuant

to Maryland Law and Maryland Rules, Altenburg retained counsel and moved to dismiss

LSF9's and Caliber's illegal action(s) through McCabe claiming that neither McCabe nor

LSF9 had the right to pursue the Altenburg action since LSF9 is not licensed as a Maryland

collection agency.

27.     The Circuit Court for Howard County, Maryland held two hearings on Altenburg's

motion and on August 30, 2016 dismissed McCabe's collection action finding that McCabe

did not have the right to pursue the foreclosure/collection action on LSF9's behalf.

Specifically, the Court held and made the following findings:

   a. LSF9 is a foreign, statutory trust and is exempt from registering to do
      business with the State Department of Assessments and Taxation but is not
      exempt from the licensing requirements of the Maryland Collection Agency
      Licening Act ("MCALA"), MD. CODE ANN., BUS. REG. § 7-101, *et seq.*

   b. LSF9 purchased the Altenburg Loan on July 29, 2015.

   c. LSF9 is the note holder of the Altenburg loan but is not licensed under
      MCALA.

   d. Because LSF9 is a foreign, statutory trust, it is not a "trust company" as that
      term is used under the MCALA.

e.  McCabe's foreclosure action to collect on LSF9's behalf is a consumer claim subject to the requirements of MCALA.

f.  The Maryland licensing requirements on LSF9 under MCALA do not appear to onerous or place a burden on LSF9.

g.  LSF9 purchased the Altenburg Loan after the default for a price less than the face value of the debt and commence foreclosure proceedings to collect on the Altenburg Loan.

h.  LSF9 is a collection agency under MCALA and it needs to be licensed.

i.  LSF9's failure to be licensed under MCALA is a fatal to McCabe's ability, on behalf of LSF9, to bring a foreclosure action against Altenburg and the Altenburg action is a nullity and was otherwise improper.

28.    As a result of and direct, proximate cause of LSF9's and Caliber's illegal and improper efforts to collect from him in the Altenburg Action, by using the court system without the right to do so and also without the required license required under Maryland law, Altenburg has been damaged and has sustained losses.  These include:

a.  He has incurred legal fees in the sum of $11,500 successfully defending the Altenburg Action initiated on behalf of LSF9 and Caliber by McCabe;

b.  He sustained emotional stress manifested by frustration, annoyance, and worry that his home would be taken from him by an unlicensed collection agency, i.e. LSF9, with the aid and assistance of McCabe and Caliber, using the court system and attempting to mislead the court system that LSF9 had the legal right to do so indirectly through McCabe.

c. He has incurred damage to his credit by the public filing of a foreclosure action which was improper.  In addition, he is damaged by Caliber's credit reporting to the credit reporting agencies that state it is permitted to collect from him on behalf of LSF9 even though LSF9 has no legal right to collect in the State of Maryland.

d. Statutory damages pursuant to the claims asserted herein.

### C.   FACTS ABOUT NAMED PLAINTIFF WOOD

29.    On or about December 23, 2005 Wood refinanced the Wood Property, her home and property, with National City Bank of Indiana's AccuBanc Mortgage ("Wood Loan"). She refinanced the loan for the purpose of paying-off personal debts.  The proceeds of this refinance were used entirely for these personal, consumer purposes.  The Wood Loan was insured by the Federal Housing Administration ("FHA").   PNC Bank, NA later acquired the loan as part of its acquisition of National City.

30.    Due to a reduction of household income, payments on the Wood Loan were not made and the Wood Loan became in default before January 1, 2014.

31.    On or about August 18, 2014 PNC sold the Wood Loan to Secretary of Housing and Urban Development ("HUD") as part of the FHA's Distressed Asset Stabilization Program ("DASP") where HUD permitted PNC to make FHA claims on defaulted mortgages before conducting a foreclosure sale.

32.    As part of the FHA's DASP program administered by FHA, HUD sold the Wood Loan (and hundreds of others) to LSF9 on or about December 9, 2014 when the loan was in default and HUD, PNC, Caliber, and LSF9 believed the loan to be in default.  LSF9

acquired the Wood Loan for pennies on the dollar from HUD as compared to what PNC, Caliber, and HUD claimed was due and owing on the loan.

33.     Upon information and belief, as part of its acquisition of the Wood Loan, LSF9 certified to HUD that it would comply with all laws regulating the loan and collection thereon.  This belief is based upon HUD sales prospectus information it has published related to similar sales.

34.     While the Wood Loan was in default Caliber acquired all servicing and collection rights related to its primary work and practice of servicing the defaulted loans acquired by LSF9 and its affiliates.

35.     Without the legal right to do so, Alba maintained a foreclosure action against Wood in the Circuit Court for Baltimore County, Maryland after LSF9 acquired ownership of the Wood Loan (Case No. 03C13004915)("Wood Litigation") for the purpose of collecting upon the Wood Loan from Wood on behalf of LSF9.

36.     Alba conducted a foreclosure sale of the Wood Property on December 31, 2014 as a means to collect upon the Wood Loan from Wood.

37.     On or about September 14, 2015 SIMM made a "formal demand" of $13,620.21 on behalf of Caliber that Wood pay it money related to the Wood Loan.  Wood wrote to SIMM and disputed the "formal demand."

38.     On or about September 29, 2015, the Loss Recovery Department at Caliber wrote to Wood and confirmed that SIMM was delegated authority to act on its behalf to demand sums from Wood for the purpose "to collect consumer debts and negotiate settlements on behalf of Caliber Home Loans, Inc."

39.     On or about January 28, 2016 Caliber wrote again to Wood and the IRS on behalf of LSF9 and represented that Wood owed it $122,620.21 related to the Wood Loan.  Caliber intended that Wood rely upon this communication and Wood did do so and reported the information to her tax professional.

40.     At no time did any person directly affiliated with LSF9 or acting on its behalf ever disclose to Wood that it was not licensed as a Maryland collection agency.

41.     Because Alba, Caliber, SIMM, and LSF9 concealed from her that LSF9 was not licensed as a collection agency and as an unlicensed, so-called professional, LSF9 had no legal right to demand any sums, directly or indirectly, Wood did not know until a period of less than one year before the commencement of this action that LSF9 was acting illegally under Maryland and Federal law.

42.     As a result of and direct, proximate cause of LSF9's and Caliber's illegal and improper efforts to collect from her in the Wood Action and thereafter, by using the court system without the right to do so and also without the required license required under Maryland law, Wood has been damaged and has sustained losses.  These include:

   a.  She sustained emotional stress manifested by worry, frustration, fear that further legal action would be taken against her by LSF9 with the aid and assistance of McCabe and Caliber and others using the court system and attempting to mislead the court and others, including the IRS, that LSF9 had the right to do so indirectly through Alba and Caliber.

b. She has incurred damage to his credit by the public filing of a foreclosure sale which was improper since LSF9 acted through LSF9 through Alba without the right to do so.

c. In addition, she is damaged by Caliber's credit reporting to the credit reporting agencies that state it is permitted to collect from her on behalf of LSF9 even though LSF9 has no legal right to collect in the State of Maryland.

d. Statutory damages pursuant to the claims asserted herein.

### D. FACTS RELATED TO THE DEFENDANTS AND THE CLAIMS BEFORE THIS COURT

43. A primary portion of Caliber's mortgage servicing portfolio, according to published reports, includes servicing for non-performing, sub-performing, and distressed assets like those acquired by LSF9. See http://www.nytimes.com/2015/09/29/business/dealbook/as-banks-retreat-private-equity-rushes-to-buy-troubled-home-mortgages.html. The value of Caliber's book of business exceeds $50,000,000.00. This estimate is based on the fact that Caliber retains a portion of sums its collects for its clients, including LSF9, as part of its collections work.

44. A primary portion of LSF9's business is to acquire non-performing, defaulted loans for sums less than what is claimed due on each loan and then to proceed to collect directly and indirectly on the loans. The value of LSF9's assets exceeds $50,000,000.00.

45. LSF9 is not now and never has been licensed as a Maryland collection agency. It has however, acted as an unlicensed collection agency and a debt collector by demanding and attempting to collecting through its authorized agents, including Caliber, Alba, and

McCabe, sums it is not legally entitled to collect from Named Plaintiffs and the Class members since it is acting without a mandatory license as a collection agency because its business model is simply to acquire defaulted debts in default for pennies on the dollar of what is claimed to be due and owing from borrowers like the Named Plaintiffs and Class members.

46.     Caliber relied upon the records of LSF9 for its belief that the Named Plaintiffs and the Class members' loans were in default at the time it acquired the servicing rights of their loans and performed no investigation of the facts available to it.

47.     Caliber, as the debt collector, has communicated directly or indirectly concerning consumer debts owned by LSF9 with demands and threats for payments and threats and actual acts to take judicial action against the Named Plaintiffs and Class members through Alba, McCabe and others on behalf of LSF9, including foreclosure, even though LSF9 has no legal right to collect indirectly through Caliber as an unlicensed collection agency through foreclosure or otherwise.

48.     Caliber does act as a collector and debt collector with the expectation to make non-performing loans (it collects upon) performing loans again for the long term but instead focus on whether it may obtain a greater profit by foreclosing on the secured asset to pay the debt.  According to a public filing, Caliber's practice is described as follows:

> Caliber uses a loan modification decision model to produce a "net present value" analysis as part of its decision. If the net present value of a modification is greater than the net present value of a foreclosure, loan sale or short sale; Caliber will offer the mortgagor a modification. As part of the loan modification analysis, Caliber collects financial information and orders credit reports to determine current debt-to-income ratios and affordability.

Loan Purchase Agreement as between LSF9 and Chase, filed in *In re Silva* (Case No. 13-23184), U.S. Bankruptcy Court for the Southern District of New York. *Also available* at http://www.nytimes.com/interactive/2016/06/24/business/dealbook/document-private-equity-housing.html#document/p1/a304393 (last visited on October 1, 2016).

49.     In other words, the stated policy in the preceding paragraph demonstrates that if foreclosing is the most profitable option, LSF9 is likely to foreclose.  Caliber's standard and primary modification is simply a forbearance agreement in which it typically requires a large-up-front payment and then payments to forbear foreclosure if a borrower makes payments for a period of time but the once the forbearance period is concluded the original, unaffordable loan terms are reinstated.  Since Caliber does not reduce the inflated loan principals of the loans it acquires at a significant discount, its standard forbearance agreement is simply putting off for the short-term any foreclosure and Caliber and LSF9 expect to liquidate the loan's secured property at some time in a period of less than the normal term of loan modifications by other, more traditional debt collectors of similar loans--which is 30-40 years.

## E.     THE DEFENDANTS' LEGAL DUTIES RELATED TO THE SUBJECT TRANSACTIONS SUBJECT TO THIS ACTION

50.     The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to a consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction. *Hoffman v. Stamper*, 385

Md. 1, 867 A.2d 276 (2005).  This duty of care applies to Caliber and LSF9 as their work involves secured, consumer mortgage loans acquired while in default.

51.     Since 1970, "if a statute requiring a license for conducting a trade, business or profession is regulatory in nature for the protection of the public, rather than merely to raise revenue, an unlicensed person will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy."  *Harry Berenter, Inc. v. Berman*, 258 Md. 290, 293, 265 A.2d 759, 761 (1970).  This duty to be licensed before utilizing the state courts applies to LSF9 which acts as a collection agency but is not licensed as one.

52.     Pursuant to 12 U.S.C.A. § 2605(k)(1)(C)(E), Caliber has duties to the Named Plaintiffs and the Class members to (i) take appropriate steps to avoid foreclosure as part of its standard servicer's duties and (ii) comply with any other obligation(s) found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605. Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), Caliber is required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law."  Pursuant to 12 C.F.R. § 1024.35(b)(5), Caliber is not permitted to "impos[e]… a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower."  It is unreasonable and a violation of its duties for Caliber to demand inaccurate sums due to LSF9 which is an unlicensed collection agency and has no right to collect any sums from the Named Plaintiffs and Class members while not licensed.

53.     The Maryland Mortgage Fraud Protection Act, MD. CODE ANN., REAL PROP. § 7-

401, *et seq.*, establishes a statutory duty upon LSF9 and Caliber to disclose to mortgage

borrowers and homeowners, like the Named Plaintiffs and the Class members in this action,

to disclose material information with respect to the mortgage lending process which

includes the servicing and foreclosure (and threatened foreclosure of mortgage loans).

*Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531

(D. Md. 2013); *Castle v. Capital One, N.A.*, No. CIV.A. WMN-13-1830, 2014 WL 176790,

at *5 (D. Md. Jan. 15, 2014; *Stovall v. SunTrust Mortgage, Inc.*, No. CIV.A. RDB-10-2836,

2011 WL 4402680 (D. Md. Sept. 20, 2011).  In this case Caliber and LSF9 have duties to

disclose to the Named Plaintiffs and the Class members (and the state courts) that LSF9 is

unlicensed as a collection agency and they have failed to do so.  *Compare McDaniel v.

Baranowski*, 419 Md. 560, 587, 19 A.3d 927, 943 (2011).

### F.     MARYLAND'S RESPONSE TO THE UNLICENSED COLLECTION AGENCY AND DEBT COLLECTION CRISIS AS RELATED TO THE PLAINTIFF

54.     Caliber and LSF9 are "debt collectors" as defined by the FDCPA, 15 U.S.C. §

1692a(4)(6) since each are businesses engaged in purchasing and collecting on defaulted

debts by using interstate wires and mail, among other acts.  *See also*, *Schlosser v. Fairbanks

Capital Corp.,* 323 F.3d 534, 536 (7th Cir. 2003) (the FDCPA "treats assignees as debt

collectors if the debt sought to be collected was in default when acquired by the assignee,

and as creditors if it was not. *See Bailey v. Security Nat'l Servicing Corp.,* 154 F.3d 384,

387 (7th Cir.1998); *Whitaker v. Ameritech Corp.,* 129 F.3d 952, 958 (7th Cir.1997); *see

also Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 403-04 (3d Cir.2000); *Wadlington

*v. Credit Acceptance Corp.,* 76 F.3d 103, 106-07 (6th Cir.1996); *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir.1985)").

55.     As part of its routine and on-going collection practices, LSF9 regularly collects or attempts monthly mortgage payments and/or forbearance payments or short-payoffs by and through the mails and interstate wires through its authorized servicer Caliber from the Named Plaintiffs and the Class members.  LSF9 and Caliber also attempt to collect from the same through civil litigation in Maryland Courts authorized by it and through its authorized agents, including actions which are filed as foreclosure actions in the state courts and also through bankruptcy proceedings in the United States Bankruptcy Court for Maryland.

56.     Under MD CODE ANN., BUS. REG. §7-301, a person must have a license to do business as a collection agency in the State of Maryland.

57.     The Maryland Commissioner of Financial Regulation, the state regulator of persons who acquire consumer debt after default and file lawsuits in Maryland to collect the debt, has clearly stated that:[5]

> … 4.  The position of the Agency is that, unless otherwise exempt, a person who brings actions in Maryland State courts to collect consumer claims which were acquired when the claims were in default is knowingly and willfully doing business as a "collection agency" in the State under [Bus. Reg.] § 7-101(c).  This includes, but is not limited to, the named Plaintiffs in such judicial actions, which will normally be the owners of the consumer debt.
>
> 5.  Thus the Agency's position is that a Plaintiff in a Maryland State court

---

[5] *In the Matter of:  Midland Funding, LLC, et al.,* before the Maryland State Collection Agency Licensing Board in the Office of the Commissioner of Financial Regulation, CFR-FY-2010-063.

action brought to collect a consumer claim which was acquired when the claim was in default is required to be licensed as a collection agency under MCALA, and is subject to the regulatory authority of the Agency in the conduct of that litigation.

6. The position of the Agency is that a person who brings judicial actions in Maryland State courts to collect consumer claims which were acquired when the claims were in default also meet the definition of "collector" under CL § 14-201(b) of the Maryland Consumer Debt Collection Act ("MCDCA," at Commercial Law Article ("CL"), § 14-201 *et seq.,* Annotated Code of Maryland) and of "debt collector" under 15 U.S.C. § 1692(a) of the Fair Debt Collection Practices Act ("FDCPA," at 15 U.S.C. § 1692, *et seq.*)…

58.    Every collection effort in Maryland authorized by Caliber on behalf of LSF9 (who is acting without a Collection Agency license), including each and every foreclosure action filed in Maryland courts on its behalf as well as the collection and attempted collection of any mortgage payments, and each and every judgment lien filed in Maryland, is an unfair or deceptive trade practice since these actions were committed without the right to do so as stated by the legislature.

59.    Before the 2007 session of the Maryland General Assembly, debt buyers like LSF9 sought to avoid Maryland statutes and regulation by asserting that they were not subject to Maryland statues addressing collection agencies.  *See*, Legislative History for 2007 chap. 472 (Bus. Reg. 7-101) HB 1324.  As a result the 2007 General Assembly required LSF9, and other debt buyers who acquire defaulted, consumer debts for less than the sums claimed due, to acquire a license by October 1, 2007.  *Id.*  All persons had/have knowledge of the law.

60.    Then Maryland Commissioner of Financial Regulation, Charles W. Turnbaugh, explained the purpose of the bill, HB 1324, at the time as follows:

… The law does not require licensing for businesses that only collect their **own** consumer debts, unless the business uses a name or other artifice that indicates that another party is attempting to collect the consumer debt. However, the evolution of the debt collection industry has created a "loophole" used by some entities as a means to circumvent current State collection agency laws.  Entities, such as "debt purchasers" who enter into purchase agreements to collect delinquent consumer debt rather than acting as an agent for the original creditor, currently collect consumer debt in the State without complying with any licensing or bonding requirement.  The federal government has recognized and defined debt purchasers as collection agencies, and requires that these entities fully comply with the Federal Fair Debt Collection Practices Act.  **This legislation would include debt purchasers within the definition of a "collection agency," and require them to be licensed by the Board before they may collect consumer claims in this State** … [emphasis added].

61.     However, LSF9 has attempted to collect from Named Plaintiffs and the Class through Caliber while it did not have the mandatory license required by MCALA and continued its business of collecting debts acquired in default and filing collection lawsuits in Maryland courts without the right to do so.  Caliber has known that LSF9 was unlicensed but it acted anyway even though it knew, as any other person knew, under Maryland law LSF9 was required to be licensed.

62.     The Office of the Commissioner of Financial Regulation, a division within the Department of Labor, Licensing and Regulation ("Agency") and the Maryland State Collection Agency Licensing Board ("Board"), as the agencies charged with enforcement of the Maryland Collection Agency Licensing Act, have consistently taken the position that Consumer Debt Purchasers--i.e. persons who acquire consumer debt which is in default at the time of acquisition and who collect such debt through civil litigation--are 'collection agencies'  and are subject to the licensing requirements of the Maryland

25

Collection Agency Licensing Act.  Affidavit of Gordon M. Cooley at ¶ 5, Commissioner of Financial Regulation (dated May 10, 2016).[6]

63.     Following enactment of HB 1324 the Maryland Commissioner of Financial Regulation issued its position on the change in law as DLLR Advisory Notice No. 07-06 ("Advisory").  The Advisory clearly stated the Commissioner's official position on the changes to MCALA, i.e.: "… effective October 1, 2007 any person engaged in the collection of a consumer claim the person owns, if the claim was in default when the person acquired it, is required to be licensed as a collection agency pursuant to HB 1324 …".

64.     Even though the Circuit Court for Howard County, Maryland held that LSF9 had no right to pursue the Altenburg Action as an unlicensed collection agency even with the assistance of Caliber, LSF9 and Caliber have continued to collect and attempt to collect from the Class members thereafter by threatening to foreclose even though LSF9 has no legal right to do so and remains unlicensed as a collection agency.  These subsequent collection activities in disregard of the findings and order of the court in the Altenburg Action are exemplified as follows:

> a.  LSF9 caused a document to be recorded in the land records of Montgomery County, Maryland on September 21, 2016 (Book 52801, Page 424) as part of an attempt to collect a consumer debt.

---

[6] This document was filed in Case No. 24-C-11-007101 as an Exhibit to the Office of the Commissioner of Financial Regulation's Motion to Quash (Doc. 110) in the Circuit Court for Baltimore City, Maryland

    b.  LSF9 caused a document to be recorded in the land records of Montgomery County, Maryland on September 26, 2016 (Book 52836, Page 139) as part of an attempt to collect a consumer debt.

    c.  LSF9 caused a document to be recorded in the land records of Prince George's County, Maryland on September 21, 2016 (Book 38550, Page 349) as part of an attempt to collect a consumer debt.

65.    Even though it has had sufficient notice that that LSF9 has no legal right to collect in the State of Maryland while acting as an unlicensed collection agency as described *supra*, Caliber reported debts of the Named Plaintiffs and the Class members to the credit bureaus for the purpose of pressuring the named Plaintiffs and the Class members to pay a debt to LSF9 in more than fifty other instances.

66.    LSF9 has willfully and knowingly sought, directly or indirectly, to collect debts on behalf of its unlicensed principals (i.e. LSF9), including threatened to utilize the foreclosure process when LSF9 has no legal right to pursue the foreclosure process. Caliber has also recklessly disregarded the notice before it in the proceeding paragraphs, failed to conduct reasonable investigations to inquiries it received (including those asserted in the Altenburg Action), and instead proceeded in its collection attempts with knowledge that LSF9 was an unlicensed collection agency. Further, Caliber has conspired with LSF9 and its affiliates to collect on LSF9's behalf even though LSF9 has no legal right to collect without the mandatory license required by Maryland law (either directly or indirectly). These are material misrepresentations and false statements and omissions by Caliber which would and have mislead the least sophisticated consumer by: (i) enticing voluntary

payments for sums not legally collectable by LSF9 or (ii) led an unsophisticated consumer to forgo a valid defense as recognized in the Altenburg Action.

## Named Plaintiffs' Class Allegations

67.    This action is also properly brought as a Class under Fed. R. Civ. P. 23. Named Plaintiffs propose, as the definition of the Class, that it be defined as follows:

> Those persons in the State of Maryland from whom LSF9 has communicated with, directly or indirectly, for the purpose of collecting a consumer debt it acquired while in default for sums less than what was claimed due on the debt.

68.    The particular members of the Class are capable of being described without difficult managerial or administrative problems.  The members of the Class are also readily identifiable from the information and public records available through the State of Maryland Land Records and the Office of the Commissioner of Financial Regulation.  A partial list of Class members, exceeding more than 75 persons, identified from Maryland public records is attached hereto as Exhibit 2.  Upon information and belief the size of the Class exceeds more than a hundred persons.

69.    The Class members are sufficiently numerous that individual joinder of all members is impractical.  This allegation is based in part on the fact that LSF9 has acquired many Deeds of Trust, and the loans related thereto, according to public records, throughout the State of Maryland related to the Named Plaintiffs and Class.  Further, according to public records LSF9 has attempted and/or actually utilized the collection tools of the state courts to collect from Class members but not disclosed to those Courts that it is not permitted to do so.

70.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class and, in fact, the wrongs alleged against Caliber and LSF9 by the Class members and the remedies sought by Named Plaintiff and the Class against the Defendants are identical, the only difference being the exact sum which each Class Member is entitled to receive.  The common issues include, but are certainly not limited to:

   i.    Whether LSF9 is licensed as a collection agency;

   ii.    Whether Caliber has the right to collect on behalf of LSF9 which is not licensed;

   iii.    Whether the Class members are third party beneficiaries of Caliber's duty of good faith under its license pursuant to Md. Code Regs. 09.03.06.20?

   iv.    Whether LSF9 is entitled to any relief by a Maryland Court since LSF9 is acting as an unlicensed collection agency?

   v.    Whether LSF9 and Caliber, or anyone else acting on their behalf, ever disclosed to the Named Plaintiffs and the Class members and the Maryland Courts as part of their collection attempts that LSF9 does not have the required collection agency license;

   vi.    Whether LSF9's and Caliber's concealment of the true facts concerning LSF9's illegal status should toll any limitations period(s) applied to the Class' claims;

vii.   Whether Caliber concealed from members of the Class that LSF9 was not licensed as a collection agency and had no right to collect in the State of Maryland without the license;

viii.   Whether Caliber knowingly communicated false information to other persons, including credit reporting agencies, concerning whether the debts it was intending to force the Named Plaintiffs and Class members certain credit information related to the Named Plaintiff and Class Members that the debts its desires to collect on behalf of LSF9;

ix.   Whether Caliber is permitted to continue collecting upon the loans of the Class; and

x.   Whether LSF9 is permitted to continue collecting upon the loans of the Class while LSF9 is acting without a mortgage lender and/or collection agency license from the State of Maryland.

71.   Named Plaintiffs' legal and equitable claims are typical of and identical to each member of the Class and will be based on the same legal and factual theories.

72.   LSF9's and Caliber's defenses (which defenses are denied) would be typical of and identical for each member of the Class and will be based on the same legal and factual theories.

73.   The Named Plaintiffs will also fairly and adequately represent and protect the interests of the Class.  Named Plaintiffs have retained counsel experienced in consumer class actions including actions involving unlawful lending and debt collection practices.

Named Plaintiffs do not have any interests which might cause them not to vigorously prosecute this action or that are otherwise adverse to the interests of the members of the Class.

74.     Certification of a Class under Fed. R. Civ. P. 23(b)(2) and (b)(3) is appropriate as to the Class members in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.  A class action will cause an orderly and expeditious administration of Class members' claims, and economies of time, effort and expenses will be fostered and uniformity of decisions will be ensured.

75.     Named Plaintiffs' claims are typical of the claims of the class members.

76.     Named Plaintiffs will fairly and adequately protect the interests of all class members in the prosecution of this action. They are similarly situated with, and have suffered injuries similar to the members of the Class they seek to represent. Named Plaintiffs have been wronged, wish to obtain redress of the wrong, and want the Defendants stopped from enriching themselves via illegal activities or otherwise perpetrating similar wrongs on others on behalf of unlicensed collection agencies.

77.     Caliber's and LSF9's failure to disclose the true status of LSF9 to Named Plaintiffs and the Class members tolled the running of any limitations that may otherwise apply to the claims of the Named Plaintiff and the members of the Class until Caliber and LSF9 made the disclosures it was required to make.

78.     Caliber has known since 2007 that LSF9 was required to have a license to act as a collection agency in the State of Maryland. Instead of requiring LSF9 to comply with the

law before it began to act on its behalf, LSF9 chose to evade the path described above to improperly circumvent Maryland law and improperly lend its license to LSF9.  At all times relevant and material to this action, with knowledge that LSF9 failed to obtain the required license to act as collection agency, Caliber attempted to collect or actually collect on its behalf from the Named Plaintiffs and Class Members.

79.     The Named Plaintiff and members of the Class were not required to assume that LSF9 was engaging in illegal activities with the aid and assistance of Caliber. The Named Plaintiffs and members of the Class were reasonable in not assuming that Caliber was aiding LSF9's illegal activities.

80.     Any limitations period that may otherwise apply to claims of the Named Plaintiffs and members of the Class is equitably tolled since LSF9 and Caliber had duties to disclose material facts to the Named Plaintiffs and Class member related to LSF9's illegal status. The omission of this fact made LSF9's and Caliber's acts unfair or deceptive.

81.      Due to their presumed and actual knowledge, as described *supra*, Caliber and LSF9 had an appreciation that they were not entitled to receive the benefits they were attempting to collect or actually collecting from the Named Plaintiffs and Class members.

82.     The Class members have suffered damages, losses, and harm similar those sustained by the Named Plaintiffs as described in ¶¶ 5, 28, 42 above.

## COUNT I
## DECLARATORY RELIEF
### (Against All Defendants)

83.     Named Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

84.     Named Plaintiffs and the Class Members are entitled to declaratory relief pursuant 28 U.S.C.A. § 2201, Fed. R. Civ. P. 57, Fed. R. Civ. P. 23, and MD. CODE ANN., CTS. & JUD PROC. § 3-409.

85.     Named Plaintiffs seek a declaration that: (a) LSF9 is not entitled, directly or indirectly, as a matter of law to collect against any member of the Class while acting as an unlicensed collection agency; (b) Named Plaintiffs also seek a declaration that Caliber may not, directly or indirectly threaten or actually utilize the assistance of any Maryland court to collect or attempt to collect any consumer debt owed to LSF9 while it is acting as an unlicensed collection agency.

WHEREFORE, Named Plaintiffs pray that this Court to enter declaratory judgments in their favor and make the following Orders to:

   a.   Certify this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) with the Named Plaintiffs as the Class  Representatives and their attorneys as counsel on behalf of the Class described herein;

   b.   Order and declare that as a matter of law, that LSF9, Caliber and any person acting on LSF9's behalf, including its authorized agents and attorneys, may not collect directly or indirectly from Named Plaintiffs and the Class members' alleged debts;

   c.   Order and declare that LSF9 is not entitled to the assistance of any Maryland Court to collect any alleged consumer debt of Named Plaintiffs or the Class members;

   d.   Award reasonable attorneys' fees, litigation expenses and costs;

    e.   Order other appropriate declaratory relief; and

    f.   Provide such other or further relief as the Court deems appropriate.

**COUNT II**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT,**
**15 U.S.C. § 1692,** *et seq.*

86.    Named Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

87.    Defendants acquired their interest in the Named Plaintiffs' and Class members' consumer loans during a period in which each allege (directly and indirectly) the loan was in default and therefore both Caliber and LSF9 are Debt Collectors within the meaning of 15 U.S.C. § 1692a(6).

88.    By communicating with the Named Plaintiffs and Class members directly and indirectly and threatening and/or actually pursuing litigation and demanding sums not legally due from the Named Plaintiff and Class members because LSF9 had no legal right as an unlicensed collection agency to make such demands, Caliber and LSF9 used false, deceptive, or misleading representations or means in connection with the collection of the consumer debts of the Named Plaintiff and Class members in violation of 15 U.S.C. § 1692e(5).

89.    By filing documents in the government's and court records throughout the State of Maryland indicating that LSF9 has a right to collect payments from the Named Plaintiffs and Class Members even though LSF9 has no legal right as an unlicensed collection agency, LSF9 and Caliber have used communications in collecting or attempting to collect consumer debts which imply that the government or a government agency has authorized

34

the collection efforts when the government has not done so, in violation of 15 U.S.C. § 1692e(9).

90.     LSF9's and Caliber's actions described herein constitute unfair or unconscionable means to collect or attempt to collect from the Named Plaintiff and Class Members in violation of 15 U.S.C. § 1692f.

91.     Named Plaintiffs and the Class Members have suffered actual economic and non-economic damages, as more fully described supra and have incurred attorney's fees and court costs as a result of Defendants' illegal debt collection practices and direct and indirect actions described herein

92.     The FDCPA provides for statutory damages in addition to actual damages.

WHEREFORE Named Plaintiffs pray that this Court to enter judgment in their and the Class' favor against LSF9 and Caliber on their FDCPA claims and to:

    a.   Certify this case as a class action with the Named Plaintiffs as class representatives and their attorneys as counsel on behalf of the Class and described herein;

    b.   Award Statutory damages in the amount allowed by the FDCPA equal to $500,000.00 to the Class members;

    c.   Award reasonable attorney's fees, litigation expenses and costs; and

    d.   Provide such other or further relief as the Court deems appropriate.

## COUNT III
### Violation Maryland's the Maryland Consumer Debt Collection Act, COM. LAW, §14-201 *et seq.* ("MCDCA") and the Maryland Consumer Protection Act, COM. LAW, §13-101 *et seq. et seq.* ("MCDCA")

93.     Named Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

94.     Defendants are collectors by their attempts and acts to collect upon debts of the Named Plaintiffs and Class members arising out of consumer transactions—their loans used for personal purposes to acquire or refinance their homes and Property.  MD CODE ANN., COM. LAW §14-201(b).

95.     Through its communications to the Named Plaintiff and Class Members and those recorded in the land records of various counties and filed in the state courts, Defendants have attempted to assert the right to collect money from the Named Plaintiffs and Class members to which LSF9 has no legal right to attempt to collect because LSF9 is not licensed as a collection agency but is required to be licensed to collect directly or indirectly in the State of Maryland.  These communications are made in violation of MD CODE ANN., COM. LAW §14-202(8).

96.     Further, LSF9 and Caliber have maintained that each may cause foreclosure actions on behalf of LSF9 to be threatened and maintained even though LSF9 has no legal right to pursue the actions while acting without the proper collection agency in violation of MD CODE ANN., COM. LAW §14-202(8). The State Courts, Named Plaintiffs and Class Members have relied upon these acts because the Defendants concealed from them the true facts that LSF9 was acting illegally.

97.     Finally, by recording and filing documents in the government's land and court records throughout the State of Maryland indicating that LSF9 has a right to collect payments from the Named Plaintiffs and Class Members, Caliber and LSF9 have used a communication in collecting or attempting to collect a debt which improperly implies that the government or a government agency has authorized the collection effort when the government has not done so in violation of MD CODE ANN., COM. LAW §14-202(9).

98.     Named Plaintiffs and the Class members are therefore entitled to their damages and losses described *supra* which have proximately resulted from Defendants' direct and indirect actions in violation of the MCDCA.  MD. CODE ANN., COM. LAW, § 14-203.

99.     Caliber's and LSF9's violations of the MCDCA are also *per se* violations of the MCPA. Md. Code Ann., Com. Law § 13-301(14)(iii).

100.    Named Plaintiffs and the Class members have each sustained damages as described herein except under this claim they seek no damages or losses under this claim for any act or omission to any credit reporting agencies.

WHEREFORE Named Plaintiffs pray that this Court to enter judgment in their and the Class' favor against the Defendants on their MCDCA/MCPA claims and to:

a.  Certify this claim as a partial class action with the Named Plaintiffs as the Class Representatives and their attorneys as counsel on behalf of the Class described herein for the limited purpose pursuant to Fed. R. Civ. P. 23(c)(4) for determining the Defendants' liability to the Class pursuant to the MCDCA/MCPA;

b.  Award actual damages to Named Plaintiffs for their individual damages

under the MCDCA in the sum of $20,000 to Mr. Altenburg and $10,000 to

Ms. Wood respectfully;

c.  Award reasonable attorney's fees, litigation expenses and costs; and

d.  Provide such other or further relief as the Court deems appropriate.

Respectfully Submitted,

*//s//Phillip R. Robinson*
Phillip R. Robinson
 Bar No. Bar Number 27824
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304
*Attorney for Named Plaintiffs*