## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND
### (Northern Division)

**JEFFREY A. ALTENBURG**
AND
**JUDY WOOD**
> *On Behalf of a Class of Similarly*
> *Situated Persons*

       Plaintiffs

v.

                           Case No: 16-3374--RDB

**CALIBER HOME LOANS, INC.**
AND
**U.S. BANK TRUST, NA SOLELY IN
ITS CAPACITY AS TRUSTEE FOR
LSF9 MASTER PARTICIPATION
TRUST**

       Defendants

**PLAINTIFFS JEFFERY ALTENBURG'S AND JUDY WOOD'S
OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND CERTIFY
QUESTIONS TO THE MARYLAND COURT OF APPEALS (ECF 18)**

<u>Dated</u>

December 22, 2016

                        Respectfully Submitted,

                        Phillip R. Robinson
                        Consumer Law Center, LLC
                        8737 Colesville Rd., Suite 308
                        Silver Spring, MD 20910
                        Phone (301) 448-1304
                        ***ATTORNEY FOR THE
PLAINTIFFS***

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS....................................................................................................i

TABLE OF AUTHORITIES .........................................................................................iii

I. INTRODUCTION…..………...........................................................................1

II. BACKGROUND.............................................................................................1

    A.      Maryland Law Governing Debt Buyers of Defaulted Consumer Debts...............1

    B.      This and Other Courts as well as the Administrative Agency
          Authorized to Enforce MCALA Have Routinely Analyzed the
          Statute and Rejected Any Attempts and Arguments that a Licensed
          Collector May Lend its License to an Unlicensed Collection Agency..................2

    C.      All Attempts to Reverse *Finch* and this Court's Prior Analysis
          Have Been Rejected…………….....................................................…........7

    D.      Background on LSF9 & Caliber..................…………..……………….............8

    E.      Background on Mr. Altenburg & LSF9.......…………..……………….............10

    F.      Background on Ms. Wood & LSF9....…………….……………….............10

III. STANDARD OF REVIEW………….........................................................11

    A.      Motion to Dismiss.................................................................................11

    B.      Motion to Certify Questions to the Maryland Court of Appeals....……........12

IV. ARGUMENT..................................................................................................12

    A.      As a Matter of Collateral Estoppel, Defendants' Arguments and
          Theories Presented to the Court are Not Permitted...............................13

    B.      Even if Collateral Estoppel did not Apply, this Court is Required
          to Give Full Faith and Credit to the Judgment in the prior *Altenburg*
          *Action* in the State Court and May Not Permit the Defendants in this
          Action, Who Lost in State Court, to Relitigate the Issues They Lost
          in the State Court...……………………………………………….................16

C.  Defendants Improperly Conflate the Terms "Trust Company" and
    "Statutory Trust" as Synonymous When they Are Treated as
    Different Entities Under Maryland Law……………………...........................18

D.  The Maryland Statutory Trust Act Does Not Govern Collection
    Agencies But Does Govern Registration Requirements with the
    State Department of Assessments and Taxation…...…...…………….................20

E.  The Status of LSF9's Trustee May Not Act as a Shield
    for LSF9's Responsibilities Under State Law...………..……………................23

F.  The Declaratory Relief Sought by the Plaintiffs is Not Moot
    Since LSF9 is Not Licensed as a Collection Agency But Continues
    to Collect and Attempt to Collect While Unlicensed as a Collection
    Agency..............................................................................................................24

G.  Professional Purchasers of Defaulted, Consumer Debts Who
    Directly and Indirectly Collect on Those Debts, including by
    Litigation, are Debt Collectors Under the FDCPA…..…………..………………26

H.  The Defendants' Acts to Conceal from Ms. Wood LSF9's Illegal
    Status Tolls Any FDCPA Statute of Limitations; Alternatively,
    Certain of Ms. Wood's FDCPA Claims Accrued Less Than a Year
    before the Commencement of this Action...…………...…………………...........29

I.  Res-Judicata and the *Rooker-Feldman* Doctrine Do Not Bar Plaintiffs'
    Claims…………………….........................................................................…....31

J.  There are No Novel Claims or Issues Presented in this Action Based
    Upon the Disputed Facts for the Court to Justify Certification of
    Questions to the Court of Appeals at this Time...............……………….............33

V. CONCLUSION……………...……………………………………………...........35

# Table of Authorities

**Cases**                                                                 **Page(s)**

*Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*,      3, 21, 25,
929 F. Supp. 2d 502 (D. Md. 2013)                                        35

*Allstate Ins. Co. v. Cherry*, Civ. No.  ELH-11-2898, 2012 WL         15
1425158 (D. Md. Apr. 23, 2012)

*Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d         30-31
492, 501 (D. Md. 2004)

*Archers Glen Partners, Inc. v. Garner*, 933 A.2d 405, 424             33
(2007), aff'd, 949 A.2d 639 (2008)

*Arrington v. Colleen, Inc.*, 2001 WL 34117735 (D. Md. 2001)          33

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)                              15

*Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060 (4th            12
Cir.1984)

*Beaver v. Bridwell*, 598 F. Supp. 90 (D. Md. 1984)                   17

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007)          11, 12

*Betskoff v. Cosby*, No. CIV. WDQ-12-3757, 2013 WL                    30
4587634 (D. Md. Aug. 27, 2013)

*Brereton v. Bountiful City,* 434 F.3d 1213 (10th Cir.2006)           15

*Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719        3, 6, 8,
 (D. Md. 2011)                                                    17, 24-
                                                                 25, 34

*Coleman v. Soccer Ass'n of Columbia*, 69 A.3d 1149 (2013)             8

*Currie v. Wells Fargo Bank, N.A.,* 950 F. Supp. 2d 788               32
(D. Md. 2013)

## Table of Authorities

*Crawford v. LVNV Funding, LLC*, 758 F.3d 1254 (11th Cir. 2014)     28

*Davani v. Virginia Dep't of Transp.*, 434 F.3d 712 (4th Cir. 2006)     32

*Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309 (11th Cir. 2015)     27

*DeSantis v. Computer Credit, Inc.*, 269 F.3d 159 (2d Cir. 2001)     28

*Dixon v. SSA Baltimore Fed. Credit Union*, 822 F. Supp. 302 (D. Md. 1992)     17

*Fangman v. Genuine Title, LLC*, 136 A.3d 772 (2016)     25-26

*Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394 (1981)     15

*Finch v. LVNV Funding, LLC*, 71 A.3d 193 (2013)     3, 4, 7-8, 34

*Fontell v. Hassett*, 870 F. Supp. 2d 395 (D. Md. 2012)     15

*Garrity v. Maryland State Bd. of Plumbing*, 135 A.3d 452 (2016)     13

*Goldsmith v. Mayor & City Council of Baltimore*, 987 F.2d 1064 (4th Cir. 1993)     15

*Hauk v. LVNV Funding, LLC,* 749 F. Supp. 2d 358 (D. Md. 2013)     8, 24-25, 34

*Harry Berenter, Inc. v. Berman*, 265 A.2d 759 (1970)     2, 22-23

*Harvey v. Marshall,* 857 A.2d 529 (2004)     20

*Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131 (4th Cir. 2016)     26-27, 29

**Table of Authorities**

*Horowitz v. Cont'l Cas. Co.*, No. CV DKC 14-3698, 2015 WL 9460111 (D. Md. Dec. 28, 2015) — 14

*In re Genesys Data Techs., Inc.*, 204 F.3d 124 (4th Cir. 2000) — 17

*Jason v. Nat'l Loan Recoveries, LLC*, 134 A.3d 421 (2016) — 7, 34

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016) — 28

*Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245 (5th Cir. 1997) — 33

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) — 6

*Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640 (4th Cir. 2011) — 32

*Kasap v. Folger Nolan Fleming & Douglas, Inc.,* 166 F.3d 1243 (D.C.Cir.1999) — 15

*Land v. Green Tree Servicing, LLC*, 140 F. Supp. 3d 539 (D.S.C. 2015) — 30

*Len Stoler, Inc. v. Wisner*, 115 A.3d 720 (2015) — 20

*Lumbermen's Mutual Casualty Co. v. Commissioner of the State of Maryland,* 487 A.2d 271 (1985) — 20

*LVNV Funding v. Finch & Dorsey,* 77 A.3d 1084 (2013) — 7

*Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612 (D. Md. 2013) — 12, 34

*Lynn v. Selene Fin., LP*, No. 7:15-CV-159-FL, 2016 WL 5231832 (E.D.N.C. Aug. 25, 2016) — 28-29

*Maddox v. Cohn*, 36 A.3d 426 (2012) — 22

## Table of Authorities

*Mohammed v. Wells Fargo N.A.*, No. 3:15-CV-00403, 2016
WL 446633 (M.D. Pa. Jan. 11, 2016) ................................................................ 32

*Monroe Retail, Inc. v. Charter One Bank, N.A.*, 624 F. Supp.
2d 677 (N.D. Ohio 2007) ................................................................................ 23

*Moss v. Ditech Fin., LLC*, No. PWG-15-2065, 2016 WL
4077719 (D. Md. Aug. 1, 2016) ...................................................................... 28

*Mostofi v. Midland Funding, LLC*, 117 A.3d 639 (2015) ............................. 7, 34

*Old Republic Ins. Co. v. Gordon*, 137 A.3d 237 (2016) ............................... 7, 34

*Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322 (1979) ......................... 13, 16

*Peckey v. Bank of Am., N.A.*, No. CIV.A. RDB-14-433, 2015
WL 1622967 (D. Md. Apr. 10, 2015) .............................................................. 30

*Peterson v. Servis One, Inc.*, No. CV WMN-15-3151, 2016
WL 215921 (D. Md. Jan. 19, 2016) ................................................................. 22

*Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558
(D. Md. 2009) ...................................................................................................... 5

*Purnell v. Arrow Fin. Servs., LLC*, No. 05-CV-73384-DT,
2007 WL 421828 (E.D. Mich. Feb. 2, 2007) .................................................. 32

*RAB Performance Recoveries v. Fry*, 445 Md. 21 (2015) ............................... 7

*Reid v. Wells Fargo Home Mortg.*, No. CIV. RDB-10-01853,
2011 WL 4072143 (D. Md. Sept. 12, 2011) ............................................... 14, 18

*Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218
(4th Cir. 2009) ................................................................................................... 11

*Ross v. Deutsche Bank Nat. Trust Co.*, 933 F. Supp. 2d 225
(D. Mass. 2013) ................................................................................................. 24

*Sadowski v. U.S. Postal Serv.*, 643 F. Supp. 2d 749 (D. Md.
2009) ................................................................................................................... 22

**Table of Authorities**

*Scarfield v. Muntjan*, 119 A.3d 745, 752 (2015) — 23

*S.E.C. v. Resnick*, 604 F. Supp. 2d 773 (D. Md. 2009) — 15

*Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219 (4th Cir. 1998) — 14, 16

*Somin v. Total Cmty. Mgmt. Corp.,* 494 F.Supp.2d 153 (E.D.N.Y.2007) — 30

*State v. Crescent Cities Jaycees Found., Inc.*, 624 A.2d 955 (1993) — 8, 18

*Stone v. Wayric Services Inc.*, Case No. 1:10-cv-00484 (D.C. Md.) — 25

*United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083 (4th Cir. 1979) — 12

*United States v. Tatum,* 943 F.2d 370 (4th Cir. 1991) — 15

*U.S. v. Mendoza*, 464 U.S. 154 (1984) — 13, 16

*W. Virginia v. CashCall, Inc.*, 605 F. Supp. 2d 781 (S.D.W. Va. 2009) — 24

*Williams v. State*, 438 A.2d 1301 (1981) — 23

*Winemiller v. Worldwide Asset Purchasing, LLC*, No. 1:09-CV-02487, 2011 WL 1457749 (D. Md. Apr. 15, 2011) — 4, 8, 24, 34

**<u>Statutes</u>**

15 U.S.C.A. §1692 — 31

28 U.S.C.A. §1738 — 16, 17

28 U.S.C.A. §2201 — 25

Md. Code Ann., Bus. Reg. § 1-101 — 18, 21

# Table of Authorities

Md. Code Ann., Bus. Reg. § 7-101                     1, 4, 18, 21

Md. Code Ann., Bus. Reg. § 7-102                     18

Md. Code Ann., Bus. Reg. § 7-301                     2

Md. Code Ann., Bus. Reg. § 7-401                     2

Md. Code Ann., Corps. & Ass'ns. § 12-101             18-19

Md. Code Ann., Corps. & Ass'ns. § 12-102             20, 23

Md. Code Ann., Corps. & Ass'ns. § 12-908             19-21, 23

Md. Code Ann., Corps. & Ass'ns. § 12-909             20, 23, 34

Md. Code Ann., Cts. & Jud. Proc. § 3-409             25

Md. Code Ann., Fin. Inst. § 3-501                    18

Md. Code Ann., Fin. Inst. § 3-204                    18

Md. Code Ann., Fin. Inst. § 3-212                    18

Md. Code Ann., Fin. Inst. § 9-804                    21

Md. Code Ann., Real Prop. § 7-105.1                  22, 23

**Rules**

Fed.R.Civ.Proc. 23                                   25

Fed.R.Civ.Proc. 57                                   25

**Other Authorities**

Business Regulation—Collection Agencies—Licensing And Regulation, 2007 Maryland Laws Ch. 472 (H.B. 1324)                2

# Table of Authorities

Courts And Judicial Proceedings—Consumer Debt Collection Actions—Restrictions, 2016 Maryland Laws Ch. 579 (S.B. 771) — 8

Corporations And Associations--Statutory Trusts, 2010 Maryland Laws Ch. 611 (S.B. 784) — 19

H.B. 951 (2015 Sess.) — 8

H.B. 417 (2014 Sess.) — 8

OCC Letter dated January 14, 2005 regarding *Wells Fargo v. Harris* and *Bank One v. Feinstein* — 24

Ricky HENSON, et al., Plaintiffs-Appellants, v. SANTANDER CONSUMER USA, INC., Defendant-Appellee, Ncb Management Services, Inc. and Commercial Recovery Systems, Inc., Defendants., 2015 WL 4932610 (C.A.4) (Brief of Appellees) — 26-27

S.B. 284 (2014 Sess.) — 8

S.B. 771 (2016 Sess.) — 8

65 Md. Op. Att'y Gen. 36 (1980) — 18

65 Md. Op. Att'y Gen. 40 (1980) — 18

Named Plaintiffs Jeffrey Altenburg and Judy Wood (collectively referred herein as "Plaintiffs" or "Named Plaintiffs") on their individual behalf and on behalf of the putative class members they represent, do hereby oppose Defendants Caliber Home Loans, Inc.'s ("Caliber") and U.S. Bank Trust, NA, solely in its capacity as Trustee for LSF9 Master Participation Trust's ("LSF9") (collectively referred herein as "Defendants") Motion to Dismiss or, in the Alternative, to Stay Proceedings and Certify Questions to the Maryland Court of Appeals (ECF. 18)("Motion")[1] and say in opposition:

## I.   INTRODUCTION

Nearly nine months ago, Mr. Altenburg first alerted the Defendants that he was challenging LSF9's right to utilize the jurisdiction of the state court and pursue a foreclosure action and attempt to collect from him.  Notwithstanding that notice, the Defendants have continued their collection practices from Maryland consumers even though LSF9 is not licensed as a collection agency but primarily acquires consumer debts for pennies on the dollar and thereafter collects on those debts through litigation.  Even after this action has commenced, the Defendants have continued to collect and attempt to collect from Maryland consumers in disregard of Maryland law and the final order of the Circuit Court for Howard County, Maryland finding their practices to be improper and in violation of the Maryland Collection Agency Licensing Act, BUS. REG. § 7-101, *et. seq.* ("MCALA").  Now, by their Motion, Defendants seek to delay these proceedings so they may continue their illegal activities.  However, for the reasons stated herein, the Motion should be denied.

## II.   BACKGROUND

### A.   Maryland Law Governing Debt Buyers of Defaulted Consumer Debts

---

[1] "Motion" as used hereinafter refers to Defendants' Memorandum of Law (ECF. 18-1).

The Maryland Collection Agency Licensing Act ("MCALA") defines a collection agency to "mean[] a person who engages **directly or indirectly** in the business of...collecting a consumer claim the person owns, if the claim was in default when the person acquired it...." BUS. REG. § 7-101(c)(1)(ii)(emphasis added). This definition was modified by the legislature "FOR the purpose of altering the definition of "collection agency" as it relates to the licensing and regulation of collection agencies; requiring certain additional persons to be licensed by the State Collection Agency Licensing Board **before they may collect consumer claims in this State**...." BUSINESS REGULATION—COLLECTION AGENCIES—LICENSING AND REGULATION, 2007 Maryland Laws Ch. 472 (H.B. 1324)(emphasis added). MCALA requires collection agencies to be licensed. BUS. REG. § 7-301(a). If a person conducts business as a collection agency without a license, that person also commits a crime. BUS. REG. § 7-401(b).

Finally, there is nothing novel with the Plaintiffs' position that an unlicensed collection agency may not utilize the jurisdiction of Maryland courts since longstanding Maryland law has held:

> that if a statute requiring a license for conducting a trade, business or profession is regulatory in nature for the protection of the public, rather than merely to raise revenue, an unlicensed person will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy.

*Harry Berenter, Inc. v. Berman*, 265 A.2d 759, 761 (1970).

**B.    This and Other Courts as well as the Administrative Agency Authorized to Enforce MCALA Have Routinely Analyzed the Statute and Rejected Any Attempts and Arguments that a Licensed Collector May Lend its License to an Unlicensed Collection Agency**

The Court of Special Appeals has explained:

LVNV claims in a footnote that it is a "passive" debt buyer, and that passive debt buyers were "confused about whether they were 'required to be licensed as collection agencies when they collect consumer debts through civil litigation....' "

2

> **This contention has been consistently rejected**. *See, e.g., Bradshaw v. Hilco Receivables, LLC*, 765 F.Supp.2d 719, 727 (D.Md.2011) (applying Maryland law) (rejecting debt buyer's argument that it was confused whether a "passive" debt buyer must be licensed as a collection agency, and explaining that "DLLR issued an advisory notice clarifying its official position" on July 17, 2007).

*Finch v. LVNV Funding, LLC*, 71 A.3d 193, 199 (2013)(emphasis added).

This Court has also routinely analyzed and applied MCALA's plain language and rejected all contentions that a licensed professional may lend its license to an unlicensed collection agency to avoid the type of claims presented in this action. For example, this Court has explained "MCALA is clear on its face—it requires that any person who directly or indirectly engages in collecting debts must be licensed. *Id.* at §§ 7–101(c), 7–301(a)." *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 726 (D. Md. 2011). Judge Hollander also has explained that:

> [A] plaintiff sufficiently alleges [claims under the FDCPA, MCPA, and MMFPA involving an unlicensed collection agency which operates] as a 'passive' purchaser of debts in default, by virtue of its indirect collection activity, *i.e.,* collection of mortgage debts through servicing by PennyMac Services and Citi. As *Bradshaw, Hauk,* and *Winemiller* make clear, a 'passive' debt purchaser qualifies as a collection agency by pursuing collection activities, even through a third party, such as an attorney. *See Bradshaw,* 765 F.Supp.2d at 726–27; *Hauk,* 749 F.Supp.2d at 366–67; *Winemiller,* 2011 WL 1457749 at *4.

*Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 523 (D. Md. 2013). *See also Fontell v. Hassett*, 870 F. Supp. 2d 395, 409 (D. Md. 2012)("this Court finds that as a matter of law, the management agent should be considered a third party under § 7–101(c)(1)(i) when collecting debts on behalf of the homeowner association, since the parties were merely bound by contract and are indisputably separate entities. Thus, the management agent's actions in sending collection notices and filing a lien on Plaintiff's property would constitute doing business as a collection agency under the MCALA"); *Winemiller v. Worldwide Asset Purchasing, LLC*, No. 1:09-CV-02487, 2011 WL 1457749, at *4 (D. Md. Apr. 15, 2011)("[The unlicensed collection agencies] engage in their business, the filing of lawsuits, as collection agencies *for the purpose of*

3

collecting debts...Furthermore, MCALA does not distinguish between collection agencies that use different mechanisms to collect debt. It targets all persons and entities that do business as collection agencies. If the Maryland legislature wanted to exempt businesses that utilize particular forms of debt collection from MCALA's licensing requirements, then it would have specified those forms in the statute rather than using the general language of 'does business as a collection agency'").

Various Maryland circuit courts since *Finch*, been sufficiently able to apply the plain language of MCALA and holdings of *Finch* to a variety of unlicensed, successor collection agencies as a means to collect upon debts.[2]  *See e.g. Devan v. Wilcox; Wilcox v.* Wilmington Savings Fund Society, FSB, as Trustee for the Primestar-H Fund I Trust,  Cir. Ct. for Anne Arundel County, Maryland Case No. Case No: C-02-CV-14-000099 (Final Order & Judgment dated August 5, 2016 and Class Action Settlement Agreement dated March 1, 2016) (attached Plaintiffs' Motion for Judicial Notice ["P. Jud. Not."])(ECF 21-3 & 21-4); *Blackstone v. Sharma*, Cir. Ct. for Mont. County, Case No. 397954V (Opinion and Order dated August 28, 2015)(presented by the Defendants at ECF 18-21); *Shanahan v. Marvastian*, Cir. Ct. for Mont. County, Case No. 396663V (Opinions and Orders)(presented by the Defendants at ECF 18-19 & 18-20).[3]   Before the

---

[2] Defendants' improperly suggest to the Court that a series of reported and unreported cases challenging the securitization and transfer of mortgage notes not in default to various mortgage-back-securities are somehow relevant to the claims before the Court in this case.   *See* cases cited and quoted in Motion at Pages 7-9.  None of these cases however, concern the unlicensed status of the loan owner pursuant to MCALA and its inability to indirectly acquire the jurisdiction of Maryland courts while unlicensed.

[3] Plaintiffs do not present these opinions for any binding authority but do present them to the Court as persuasive authority for the Court's consideration.  *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 563 at FN 4 (D. Md. 2009)("the Court [may consider the state court decisions]…as guidance in the interpretation of a Maryland law").  It is also true as Defendants point out in their Motion that other state trial courts have ruled, based on the record before those courts concerning different statutory trusts than are before this Court that MCALA did not apply.  *See e.g. Pugh v. Christiana Trust, a Division of Wilmington Savings Fund Society, FSB as Trustee for Sunset Mortgage Loan Trust, Series 2014-2* (ECF 18-24)(finding that the subject mortgage was not a "consumer debt" and therefore not a consumer claim under MCALA); *Rizwan v. FCI Lender Services Inc.* (ECF 18-18)(finding that the mortgage owner was a trust company and therefore exempt under MCALA).

commencement of this action, Mr. Altenburg also successfully defended such an action in the Circuit Court for Howard County concerning the statutory trust before this Court—i.e. LSF9.  *See* to P. Jud. Not. (ECF 21-7 through 21-13).  *See also* Defendant's ECF 18-6 through 18-8.

In addition, the Maryland Collection Agency Licensing Board ("Licensing Board") recently entered into a Settlement Agreement and Consent Order concerning the collection activities (i.e. foreclosure and other debt collection attempts) with an unlicensed collection agency acquiring a defaulted mortgage debt and attempting enforcement by foreclosure that indicates the position of the administrative agency enforcing MCALA is no different than the courts in *Wilcox, Marvastian,* and *Sharma.  See* Summary Order to Cease and Desist and Summary Suspension, In the Matter of National Payment Relief, LLC d/b/a Mortgage Relief - National Loan Services dated December 8, 2014 at ¶¶ 27-28, 38-39 (Case No. CFR-FY2014-0001) (attached to P. Jud. Not)(ECF. 21-3).

In addition, the Licensing Board also previously presented an Amicus Brief to this Court[4] which explained:

> the Board's administration and enforcement of the MCALA licensing scheme aids the Commissioner of Financial Regulation in the enforcement of a broader regulatory scheme designed to protect Maryland consumers. Business entities regularly attempt to circumvent Maryland's consumer protection laws by invoking exemptions or exclusions to which they are not entitled, to the detriment of Maryland consumers. The public interest demands that such exemptions and exclusions not be expanded beyond their terms, including in the context of the MCALA. The Board has a strong interest in ensuring that the MCALA remains an effective tool for protecting Maryland residents from predatory collection activities. **Private rights of action under the MCDCA, like the one before the Court, complement and reinforce the efforts of the Board and the Commissioner to enforce the consumer protections afforded by the MCALA and the MCDCA**.

---

[4] *Fontell*, 870 F. Supp. 2d at 409 ("The Court notes that its reconsideration of this issue was greatly assisted by the insightful *amicus* memorandum submitted by the Maryland State Collection Agency Licensing Board, which administers and enforces the MCALA licensing scheme").

Maryland State Collection Agency Licensing Board's Memorandum as Amicus Curiae presented in *Fontell v. Hassett*, Case No. 8:10-cv-01472-AW (D.C. of Md.)(June 5, 2012 (attached to P. Jud. Not)(ECF. 21-2) at Page 3 (emphasis added).

Given all this authority there is nothing unique in this action that has not previously been addressed by this Court, the state courts, and even the Licensing Board. In fact the Licensing Board relies upon actions like this action to carry-out enforcement. *Id.* While the Defendants may desire a different outcome, there is simply no justification for the core relief it seeks in its Motion that LSF9 is permitted to collect through another without being licensed itself.[5] Unlicensed collection agencies attempting to collect in the State of Maryland, like LSF9 in this matter, have voluntarily elected to act illegally when it was presumed and required to know the law and its requirements. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581 (2010)("common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally."); *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d at 732 ("[c]onsidering the remedial aim of the MCDCA and the dilution of the statute that would result from a contrary interpretation, the Court holds that the term 'knowledge' in the Act does not immunize debt collectors from liability for mistakes of law").

### C. All Attempts to Reverse *Finch* and this Court's Prior Analysis Have Been Rejected

All judicial attempts to have the holdings and law established by *Finch* reviewed by the Court of Appeals have failed. *LVNV Funding v. Finch & Dorsey*, 77 A.3d 1084 (2013)(certiorari denied); *RAB Performance Recoveries v. Fry*, 123 A.3d 1006 (2015)(certiorari seeking to reverse

---

[5] As part of their 'passive collection' argument Defendants also claim that a holder indirectly collecting on behalf of LSF9 as the owner of the loan exempts the activity from MCALA. Motion at 2-4. 6-9. Respectfully, this another variation of the "passive" collection theory which has been "consistently rejected." *See* argument at Pages 2-3, 24-25.

*Finch* denied).  The Court of Special Appeals has also reaffirmed its holdings in *Finch* in multiple, reported cases.  *Mostofi v. Midland Funding, LLC*, 117 A.3d 639 (2015); *Jason v. Nat'l Loan Recoveries, LLC*, 134 A.3d 421 (2016); *Old Republic Ins. Co. v. Gordon*, 137 A.3d 237 (2016). Of note, in relationship to the facts of this record, in *Gordon* a majority panel[6] of the Court concluded that "[t]he legislative history of [MCALA] does not support the conclusion that the General Assembly intended to include an insurance company pursuing subrogation rights under the definition of 'collection agency' in BR § 7–101."  *Gordon*, 137 A.3d at 249.  Rather, the majority, panel opinion in *Gordon* concluded "it is clear that the General Assembly had a specific purpose in mind in adopting the 2007 amendments, i.e., **including debt purchasers, people who purchased defaulted accounts receivable at a discount**, within the purview of MCALA."  *Id.* (emphasis added).[7]

In addition to the consistent judicial recognition of *Finch*, all legislative attempts to reverse or limit the authorities relied upon and applied by *Finch* have also failed.  *See* H.B. 951 (2015 Sess.)(Unfav. Rep. March 16, 2015); H.B. 417 (2014 Sess.)(Unfav. Rep. February 18, 2014); and S.B. 284 (2014 Sess.)(Unfav. Rep. February 10, 2014).  While failed legislation is not conclusive of the issue before the Court, it demonstrates to some degree that this Court's and the state appellate

---

[6] The Honorable Douglas Nazarian wrote a strong dissenting opinion in *Gordon* disagreeing with the majority panel's legal conclusions suggesting that there was any ambiguity applying the plain text of MCALA as related to a "*credit* insurance" business.  *Gordon*, 228 Md. App. at 22–27.

[7] Defendants acknowledge the majority panel decision in *Gordon* is "binding authority" upon the Court and suggest it is implicitly in conflict with Judge Hollander's decision in *Ademiluyi* discussed herein Motion at 12-16.  Respectfully, there is nothing inconsistent with the two cases as applied to the facts before the Court.  *Gordon*, unlike this case, involved a mortgage insurance company who acquired its interest in the borrower's loan at the time the loan was taken out and did not pay, like LSF9, pennies on the dollar for its interest.  *Gordon*, 228 Md. App. at 21 ("Old Republic became vested with subrogation rights to Countrywide's claim pursuant to Old Republic's pre-existing insurance policy with Countrywide").

court's prior rulings discussed herein are sound and should be preserved. *Coleman v. Soccer Ass'n of Columbia*, 69 A.3d 1149, 1157 (2013).

If the Legislature had disagreed with *Hauk, Bradshaw, Winemiller, Finch* and the post-*Finch* enforcement activities, it certainly could have amended MCALA as Defendants apparently wish it had done. However, the failure to take this action demonstrates to some degree that the Legislature is satisfied with the state of law governing the debt buyers. *State v. Crescent Cities Jaycees Found., Inc.*, 624 A.2d 955, 960 (1993)("In this regard, the Legislature is presumed to have known of the Attorney General's statutory interpretation and to have acquiesced in that construction absent change in the statutory language"). In fact, the Legislature and the current Governor have elected not to change Maryland law but to reaffirm it and avoid any contention that collection agencies are not required to be licensed. *See* COURTS AND JUDICIAL PROCEEDINGS—CONSUMER DEBT COLLECTION ACTIONS—RESTRICTIONS, 2016 Maryland Laws Ch. 579 (S.B. 771)("This subtitle may not be construed to alter any licensing requirement under federal or Maryland law applicable to debt buyers or collectors").

**D.    Background on LSF9 & Caliber**

"LSF9 is a Delaware Statutory Trust and no publically-held corporation owns 10% or more of LSF9." AC at ¶ 8. It "is part of a large family of private equity funds acquired and owned by Lone Star Funds ("Lone Star")." AC at ¶ 8(a) (footnotes omitted). "LSF9 is exclusively and entirely managed by Hudson Advisors L.P. which performs due diligence and analysis, asset management, and other support services for LSF9." AC at ¶ 8(b) (footnotes omitted). "As a regular part of its business, LSF9 acquires defaulted debts, just like the LSF9's debts subject to these proceedings, for less than the (i) value of the real estate secured by the debt and (ii) the sum loan balance." AC at ¶ 8(c)(footnotes omitted). Further, "[a] primary portion of LSF9's business

8

is to acquire non-performing, defaulted loans for sums less than what is claimed due on each loan and then to proceed to collect directly and indirectly on the loans." AC at ¶ 44. *See also* AC at ¶ 8.c (describing LSF9's business of defaulted debt acquisition for pennies on the dollar and collection thereafter), ¶ 55 (describing LSF9's regular collection litigation). Notwithstanding these facts, LSF9 has acted as a Maryland collection agency (AC at ¶ 2, 8, 24-27, 35-39, 44-45, 47, 49)) but not ever been licensed as one. AC at ¶¶ 2, 24, 35, 45 & 61.

LSF9 is part of "a new industry which has entered the field of consumer debt collection since the financial crisis began. Specifically, this industry of Wall Street related hedge funds have acquired hundreds and thousands of defaulted, consumer loans, which are non-performing and otherwise in default, for pennies on the dollar of what is claimed due and owing from consumers." AC at ¶ 16. LSF9 is part of Lone Star's effort to "grow[] from a bit player to a major force in the market for distressed mortgages." AC at ¶ 16(a). It is one of the "largest purchasers" of loans sold by the FHA as part of its Distressed Asset Stabilization Program ("DASP") where the FHA is selling former FHA loans to investors for pennies on the dollar. AC at ¶ 16(b).

"Caliber is the debt collector for LSF9." AC at ¶ 9. "Caliber has knowingly collected or attempted to collect from Altenburg, Wood, and the putative Class of persons they seek to represent on behalf of LSF9, an unlicensed, collection agency, throughout the State of Maryland who may not collect or attempt to collect consumer debts while not licensed." AC at ¶ 1.

## E.  Background on Mr. Altenburg & LSF9

"While [Mr. Altenburg's personal mortgage loan] was in default, LSF9 acquired all rights to and ownership [to the loan] on or about July 29, 2015." AC at ¶ 22. The Defendants' appointed agents in the state court stipulated that LSF9 acquired Mr. Altenburg's loan "for a sum less than

the total amount remaining due on the Note on the date on which LSF9 acquired the Note." *Id.*; Ex. 2 to the AC (ECF 8-2).

After it acquired Mr. Altenburg's loan, LSF9 commenced litigation to collect from Mr. Altenburg through foreclosure in the Circuit Court for Howard County, Maryland on March 9, 2016 (prior *Altenburg Action*) via the Defendants' appointed agents at the foreclosure law firm of McCabe, Weisberg & Conway, LLC ("McCabe").  AC at ¶¶ 10, 25.  Mr. Altenburg moved to dismiss the collection litigation against him in the (prior *Altenburg Action*) (AC at ¶ 26) and the state court granted that relief on August 30, 2016 (ECF 18-6 through 18-8 and 21-7 through 21-13) making the findings of fact and law summarized in the AC at ¶ 27 and **Exhibit 1** attached hereto.

At no time did Caliber or LSF9 ever disclose to Mr. Altenburg that LSF9 was acting as an unlicensed, collection agency.  AC at ¶ 23.  Caliber has also asserted a right and represented that it may collect on behalf of LSF9 from Mr. Altenburg related to his loan owned by LSF9.  AC at ¶ 25-26.

### F.      Background on Ms. Wood & LSF9

Ms. Wood borrowed a certain sum related to her former home and property for her personal use.  AC at ¶ 29.  That loan was previously insured by the FHA but after Ms. Wood defaulted on the loan it was sold to LSF9 as part of a transaction related to the FHA's DASP program on or about December 9, 2014.  AC at ¶ 29.  At the time LSF9 acquired Ms. Wood's loan, the loan was in default and LSF9 paid pennies on the dollar to acquire the consumer loan.  AC at ¶ 31.

Less than one year before the commencement of this action, on January 28, 2016, Caliber wrote Ms. Wood on behalf of LSF9 and claimed she still owed LSF9 $122,620.21.  AC at ¶ 38. Further, Caliber is reporting to the credit bureaus on a reoccurring basis that it has a right to collect

from Ms. Wood even though LSF9 has no legal right to collect through Caliber as an unlicensed collection agency.  AC at ¶ 38.  Previously, LSF9 maintained a separate collection attempt by foreclosure against Ms. Wood (AC at ¶ 35).  Caliber also previously engaged another debt collector to make demands for sums due from Ms. Wood.  AC at ¶¶ 37-39.

At no time did Caliber or LSF9 ever disclose to Ms. Wood that LSF9 was acting as an unlicensed, collection agency.  AC at ¶ 40.  Caliber has asserted a right and represented that it may collect on behalf of LSF9 from Ms. Wood related to her loan owned by LSF9.  AC at ¶ 34, 37-39.

## III.   STANDARD OF REVIEW

### A.   Motion to Dismiss

The Fourth Circuit has explained, "[t]o survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). In *Twombly* the Court considered whether the plaintiff stated "enough facts to state a claim to relief that is plausible on its face," *Twombly, 550 U.S.* at 570, observing that "plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and formalistic recitation of the elements of a cause of action will not do." *Id.* at 545. However, "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads

facts that are merely consistent with a defendant's liability, it stops short of the line between

possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court must also view the factual allegations of the complaint "in the light most favorable

to plaintiff." *Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060, 1062 (4th Cir.1984).   But the

court is not necessarily bound by the legal conclusions drawn. *Dist. 28, United Mine Workers of*

*Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085-86 (4th Cir. 1979).

Finally, pursuant to Fed. R. Civ. P. 15 the Court may grant leave to the Plaintiffs to amend

their complaint to correct any perceived deficiencies.

### B.    Motion to Certify Questions to the Maryland Court of Appeals

> The decision to certify is within the "the sound discretion of the federal court."
> *Lehman Bros. v. Schein,* 416 U.S. 386, 390, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974).
> Certification should not be invoked "absent genuinely unsettled matters of state
> law." *Arrington v. Colleen, Inc.,* Nos. AMD 00–191, AMD 00–421, AMD 00–
> 1374, 2001 WL 34117735, at *5 (D.Md. Mar. 29, 2001) (internal quotation marks
> omitted). "When there exist[s] ample precedent to guide federal court adjudication,
> the court must decide the case as would a state intermediate appellate court." *Id.*

*Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 621 (D. Md. 2013)(footnote omitted).

## IV.    ARGUMENT

### A.    As a Matter of Collateral Estoppel, Defendants' Arguments and Theories Presented to the Court are Not Permitted

By large measure, the Defendants' Motion seeks implicitly for this Court to conduct an

appellate review of the issues and facts already determined by the Circuit Court for Howard

County, Maryland.  A comparison summary of Defendants' arguments here and their appointed

agents' arguments in the state Court is shown on **Exhibit 1** attached hereto.[8]

---

[8] It should be noted that the Defendants and their Counsel in this matter are aware that a significant portion of the issues they presented to the Court in the Motion were already considered and rejected by the Circuit Court for Howard County in the prior *Altenburg Action*.  *See generally* P. Jud. Not (and specifically ECF. 21-7 through 21-13) and also Defendants' Exhibits at ECF 18-6 through 18-8. Plaintiffs are unsure

"Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party." *U.S. v. Mendoza*, 464 U.S. 154, 159, n. 4 (1984) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979)).  In *Parklane* the Supreme Court resolved a conflict among the circuits and held that  federal,  "trial courts [have the] broad discretion to determine when [offensive use  of collateral estoppel] should be applied."  *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 331, (1979) (footnote omitted). *Garrity v. Maryland State Bd. of Plumbing*, 135 A.3d 452 (2016)(applying collateral estoppel unlicensed professional status of the same party which triggered separate actions).

The Fourth Circuit has explained further that

> [c]ollateral estoppel forecloses 'the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate.' *Ramsay v. INS,* 14 F.3d 206, 210 (4th Cir.1994) (quotation omitted). For collateral estoppel to apply, the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998).  *Reid v. Wells Fargo Home Mortg.*, No. CIV. RDB-10-01853, 2011 WL 4072143, at *5 (D. Md. Sept. 12, 2011)("issue preclusion, or collateral estoppel, prevents the relitigation of factual or legal issues previously 'litigated and resolved in a valid court determination essential to the prior judgment.' *New Hampshire v. Maine,* 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)").

---

why the Defendants' Motion fails to candidly acknowledge that the arguments presented therein have already been rejected by the state court.

13

In this case, all factors are present and the Defendants are collaterally estopped from relitigating the material facts and legal findings identified on **Exhibit 1**.  First, the Circuit Court of Howard County, in the prior *Altenburg Action* held that the foreclosure was improper because LSF9 was not properly licensed as a Maryland collection agency but was required to be so licensed to acquire that Court's jurisdiction and was not otherwise exempt from being licensed. *See* **Exhibit 1**. Second, these same issues were actually litigated before the Howard County Circuit Court in two, complex motions hearings and extensive motions practice.  *Id.  See also* ECF 18-6 through 18-8, 21-7 through 21-13. Third, the determination of these issues was at the heart of the motion to dismiss filed by Mr. Altenburg that LSF9 had no right to acquire the jurisdiction of the state court while LSF9 remained unlicensed as a collection agency.  *Id.*  Fourth, the judgment of the state court, even though it has been appealed, is a final judgment.  ECF. 18-7 through 18-8.[9, 10] Fifth, the Defendants' appointed agents[11] were given an opportunity to litigate the issues in the

---

[9]     *Horowitz v. Cont'l Cas. Co.*, No. CV DKC 14-3698, 2015 WL 9460111, at *3, FN 2 (D. Md. Dec. 28, 2015), <u>reconsideration denied,</u> No. CV DKC 14-3698, 2016 WL 3597575 (D. Md. July 5, 2016)("In Maryland, 'the pendency of an appeal does not affect the finality of a judgment for *res judicata* [or collateral estoppel] purposes.' *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md.App. 504, 525 (2004)").

[10]     It is true that the dismissal of the prior *Altenburg Action* was without prejudice (so that LSF9 could go get a license and restart the process correctly and legally if it wished to do so).  In such circumstances, where the action was dismissed because the court did not have proper jurisdiction, like in this case, courts have found collateral estoppel does attached to the issues raised and decided in the prior action.  *Goldsmith v. Mayor & City Council of Baltimore*, 987 F.2d 1064, 1069 (4th Cir. 1993)("a jurisdictional dismissal that does not constitute a judgment on the merits so as to completely bar further transactionally-related claims still operates to bar relitigation of issues actually decided by that former judgment. *See, e.g., GAF Corp. v. United States,* 818 F.2d 901, 912 & n. 72 (D.C.Cir.1987). Therefore, we must determine precisely what issues the court decided in *Goldsmith I* and thus are precluded by collateral estoppel in the present action"); *Allstate Ins. Co. v. Cherry*, No. CIV.A. ELH-11-2898, 2012 WL 1425158, at *8 (D. Md. Apr. 23, 2012)(citing *Carr v. Tillery,* 591 F.3d 909, 917 (7th Cir.2010); *Goldsmith,* 987 F.2d 1064, 1069 (4th Cir.1993); *Brereton v. Bountiful City,* 434 F.3d 1213, 1218–19 (10th Cir.2006); *Kasap v. Folger Nolan Fleming & Douglas, Inc.,* 166 F.3d 1243, 1248 (D.C.Cir.1999)).

[11]     *Poku v. Fed. Deposit Ins. Corp. as Receiver for Washington Mu. Bank F.A.*, No. CIV.A. RDB-08-1198, 2011 WL 334680, at *5 (D. Md. Jan. 31, 2011)("The foreclosure trustees, who were the named parties in the foreclosure action, were appointed by, and acted as agents of WAMU Bank for the purpose of prosecuting the foreclosure action, and are therefore in privity with WAMU Bank").

state court action. In fact, Mr. Altenburg's motion was opposed at two complex motions hearings in the state court and extensive motions briefing.  *See* Jud. Not. (ECF 21-7 through 21-12).  *See also* Defendants' Exhibits (ECF 18-6 through 18-8)

Any argument by the Defendants that they were not a party to the Howard County action is unavailing since the doctrine of collateral estoppel extends to parties and their privies. *See Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981); *United States v. Tatum,* 943 F.2d 370, 381 (4th Cir. 1991). That argument also refutes any suggestion by the Defendants that they did not have a "full and fair opportunity" to litigate the core issues. Judge Blake explained "where the non-moving party had the incentive to litigate vigorously in the prior proceeding, and was able in that proceeding to examine the evidence against him, present his own evidence, cross-examine witnesses, be represented by competent counsel, and otherwise enjoy the protections of due process as relates to the issue under dispute, he will generally be considered to have had a full and fair opportunity to litigate that issue for purposes of collateral estoppel." *S.E.C. v. Resnick*, 604 F. Supp. 2d 773, 780 (D. Md. 2009).

For the reasons state herein, Defendants Caliber and LSF9 are collaterally estopped from disputing the facts and issues identified on **Exhibit 1** and summarized in AC at ¶ 27. These issues of fact and law are identical to those in the state court action and have been actually determined in a final judgment and respectfully may not be relitigated in this action by the Defendants. *Parklane,* 439 U.S. 322; *U.S. v. Mendoza,* 464 U.S. 154; *Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219; *Goldsmith,* 987 F.2d at 1069. Therefore, Defendants' Motion should be denied.

  **B.**  **Even if Collateral Estoppel did not Apply, this Court is Required to Give Full Faith and Credit to the Judgment in the prior *Altenburg Action* in the**

**State Court and May Not Permit the Defendants in this Action, Who Lost
in State Court, to Relitigate the Issues They Lost in the State Court**

Alternatively, if the Court believes that the Defendants are not precluded by collateral estoppel from presenting their losing arguments in the state court again in this action after the state court has made findings and a judgment against their position(s), Plaintiffs believe the Defendants' claims are barred by 28 U.S.C.A. § 1738.

28 U.S.C.A. § 1738 provides that this Court must give full faith and credit to the prior *Altenburg Action*.  As explained:

> 28 U.S.C. § 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state rendering the judgments. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). The Supreme Court has held this statute to apply to federal civil rights actions following state court actions. *Migra v. Warren City School Dist., Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). In determining whether Dixon's earlier state action precludes Dixon's present federal claim, this Court looks to the laws of the State of Maryland. *Snell v. Mayor and City Council of Havre de Grace,* 837 F.2d 173, 175 (4th Cir.1988).
>
> Maryland law generally precludes the relitigation of matters that have been fully and fairly litigated and finally decided between the parties by a tribunal of competent jurisdiction. *Murray Int'l v. Graham,* 315 Md. 543, 547, 555 A.2d 502 (1989). This policy avoids the expenses associated with multiple lawsuits, conserves judicial resources, and minimizes the possibilities of inconsistent decisions. *Murray Int'l,* 315 Md. at 547, 555 A.2d 502.

*Dixon v. SSA Baltimore Fed. Credit Union*, 822 F. Supp. 302, 304 (D. Md. 1992), aff'd, 991 F.2d 787 (4th Cir. 1993).  *See also Beaver v. Bridwell*, 598 F. Supp. 90, 91–92 (D. Md. 1984)(it does not matter that "the claim asserted in the federal court is based on [federal law]" because the federal court must still give full faith and credit to the state court proceeding); *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000), certified question answered, 95 Haw. 33, 18 P.3d 895 (2001)("Thus, § 1738 'does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands

16

a federal court to accept the rules chosen by the State from which the judgment is taken.' *Kremer,* 456 U.S. at 481–82, 102 S.Ct. 1883").

Nowhere in Defendants' Motion do they offer the Court or the Plaintiffs any basis to conclude that any exception to the application of 28 U.S.C.A. § 1738 applies in this circumstance to permit them to relitigate issues they and their appointed agents lost in the prior *Altenburg Action*. For these additional reasons, the Court should respectfully disregard the issues presented by the Defendants in their Motion (as summarized on **Exhibit 1**) which were previously adjudicated and give full faith and credit to the state court.[12]

### C.   Defendants Improperly Conflate the Terms "Trust Company" and "Statutory Trust" as Synonymous When They Are Treated as Different Entities Under Maryland Law

Throughout their Motion the Defendants request the Court to assume certain disputed facts and conclude as a matter of law at this stage that a "Trust Company" and a "Statutory Trust" are synonymous terms under MCALA.  Motion at 6-12, 19-23.

MCALA does not define the term 'trust company.'[13]  Elsewhere in the Maryland Code, the term "trust company" is defined.  *See* FIN. INST. § 3-101(g); FIN. INST. § 3-501(d), and EST. &

---

[12]   Plaintiffs would note that the Court likely would also not likely have jurisdiction under the *Rooker-Feldman* Doctrine to review the findings and issues already determined and were dispositive in the prior *Altenburg Action*.  There, the Defendants, through their authorized and appointed agents, lost in the state court.  While the undersigned candidly cannot find any *Rooker-Feldman* case in a similar posture as what is before the Court—i.e. Defendants who lost in a prior state court action asserting defenses and arguments to a federal court already rejected in the prior state court action—Plaintiffs cannot think of why the *Rooker-Feldman* Doctrine would permit Defendants special treatment as state court losers to seek federal court review of the issues already decided, but not Plaintiffs who lost in state court to do the same.  *Compare Bradshaw v. Hilco Receivables, LLC,* 725 F. Supp. 2d 532, 536 (D. Md. 2010)(applying the federal pleading standards announced under *Twombly* and *Iqbal* equally to plaintiffs and defendants to "promote litigation efficiency").

[13]   The Business Regulation Article defines a "'Person' [to] mean[] an individual, receiver, trustee, guardian, personal representative, fiduciary, representative of any kind, partnership, firm, association, corporation, or **other entity**."  BUS. REG. § 1-101(g)(emphasis added).  In turn MCALA defines a "'Collection agency' [to] mean[] a person who engages directly or indirectly in the business of…collecting

TRUSTS § 1-101(v).   In addition, the Commissioner of Financial Regulation is charged with regulating and approving trust companies.  FIN. INST. § 3-204; FIN. INST. § 3-212.

In sum, a "trust company" under Maryland law generally refers to (i) an entity incorporated in Maryland that is (ii) engaged in banking, and is (iii) regulated by the Commissioner of Financial Regulation.[14]  In this case LSF9 is merely an 'account' and that is not a bank and is not properly registered or licensed with the Commissioner of Financial Regulation in any capacity.  AC at ¶ 2, 8, 27, 45.

In contrast a statutory trust under Maryland law is defined as follows:

> (1) "Statutory trust" means an unincorporated business, trust, or association that is:
>     (i) Formed by filing an initial certificate of trust under § 12-204 of this title; and
>     (ii) **Governed by a governing instrument**.
> (2) "Statutory trust" includes a trust formed under this title on or before May 31, 2010, as a business trust, as the term business trust was then defined in this title.

CORPS. & ASS'NS § 12-101(h)(emphasis added).

Had the General Assembly intended to have the meaning of statutory trust to be the same as trust company it would have amended MCALA in 2010 when it enacted the Maryland Statutory Trust Act and amended other provisions of the Business Regulation Article but did not amend MCALA whatsoever.  *See* CORPORATIONS AND ASSOCIATIONS--STATUTORY TRUSTS, 2010 Maryland Laws Ch. 611 (S.B. 784) at Pages 51-74 (text of the Maryland Statutory Trust Act

---

a consumer claim the person owns, if the claim was in default when the person acquired it."  BUS. REG. § 7-101(c)(1)(ii).  MCALA however did not exempt from its scope trustees or statutory trusts.  BUS. REG. § 7-102(b).

[14]    The Attorney General has routinely explained the same understanding of trust company.  *See* 65 Md. Op. Att'y Gen. 36 (1980); 65 Md. Op. Att'y Gen. 40 (1980)("A 'banking institution' is defined as 'an institution that is incorporated under the laws of this State as a State bank, trust company, or savings bank'. FI § 1-101(d). All banking institutions are subject to the jurisdiction of the Bank Commissioner").  In light of these long standing opinions of the Office of the Attorney General, the Legislature is presumed to have acquiesced to these definitions as well.  *Crescent Cities Jaycees*, 624 A.2d at 960.

which amended the Maryland Code but <u>never</u> altering the definition of a trust company to mean a statutory trust anywhere).  *See* P. Jud. Not (ECF 21-16 and 21-17).

Therefore, pursuant to CORPS. & ASS'NS § 12-101(h), a statutory trust does not contain of the characteristics of a trust company as recognized by the Legislature discussed *supra*.  Accepting the well-pled facts before the Court, LSF9 does not engage in banking, is not incorporated in Maryland, nor is it licensed by the Commissioner of Financial Regulation. It is simply an 'account' (controlled by a large hedge fund) that is in the primary business of acquiring defaulted, consumer mortgage loans.  AC at ¶¶ 8.c, 44, 55.  Certainly without LSF9's complete "governing instrument" required by CORPS. & ASS'NS § 12-101(h)(1)(ii)[15] and related documents before the Court after discovery, it would be difficult to make the factual leaps desired by the Defendants and assume U.S. Bank Trust has any interest in or control over LSF9 (which according to the well pled complaint it had none—*see* AC at ¶ 8.b).

> **D.    The Maryland Statutory Trust Act Does Not Govern Collection Agencies But Does Govern Registration Requirements with the State Department of Assessments and Taxation**

Defendants also jump to the conclusion that LSF9 is not required to be licensed as a collection agency under MCALA because the General Assembly excluded foreclosing mortgages and deeds of trust on property in this State registering to business in the State of Maryland with the State Department of Taxation.  *See* Motion at 9-12.  These arguments rely primarily upon the Maryland Statutory Trust Act, CORPS. & ASS'NS § 12-101, *et seq.*  Specifically, Defendants rest heavily upon CORPS. & ASS'NS § 12-908 for their claimed exception to MCALA (which is found

---

[15]    *See also* DEL. CODE ANN. TIT. 12, § 3801(g)(explaining that a "governing instrument" creates a statutory trust and describes who is responsible for carrying out the tasks for the statutory trust).

in a completely different part of the Maryland Code and specifically addresses collection agencies).  *See* Motion at 10-11.

Defendants' reliance upon the Maryland Statutory Trust Act is misplaced.  It is a "well-established principle of statutory construction…that a more specific enactment governs a more general statute. *See Harvey v. Marshall,* 158 Md.App. 355, 857 A.2d 529 (2004); *Lumbermen's Mutual Casualty Co. v. Commissioner of the State of Maryland,* 302 Md. 248, 487 A.2d 271 (1985)." *Len Stoler, Inc. v. Wisner*, 115 A.3d 720, 730 (2015).  MCALA is more specific to consumer collection agency practices.

Further, CORPS. & ASS'NS § 12-908 limits its scope "for the purposes of this subtitle" (related to statutory trusts) <u>only</u>; this limitation is an indication the provision was not to apply to MCALA whatsoever.  Further, in CORPS. & ASS'NS § 1-102(c) ("The requirements of this article are in addition to and not in substitution of any other requirements of law relating to any particular corporation or class of corporation"), § 1-102(d)(1) ("To the extent that any provision of the Code which relates to a specific class of corporations conflicts with a general provision of this article, the specific provision governs"), and § 12-909 ("By doing intrastate, interstate, or foreign business in this State, a foreign statutory trust assents to the laws of this State"), the Legislature indicated that the Maryland Statutory Trust Act was <u>not</u> intended and does <u>not</u> create any exemption to the mandatory licensing requirement of LSF9 as a collection agency.[16]

---

[16]     Even if the Court wished to review any of the extrinsic tools of statutory construction from the 2010 enactment of the Maryland Statutory Trust Act, none of the extrinsic tools of legislative history indicate that the General Assembly believed as Appellants argument that that bill was intended for statutory trusts to avoid MCALA's requirements.  *See* P. Jud. Not (ECF 21-16 through 21-17).  To the contrary, if the Legislature had intended to so exclude statutory trusts from MCALA's scope it could have added a provision in the bill as it did to other Articles of the Maryland Code.  ECF 21-16 at 55-78.  In fact the legislature specifically added in the 2010 legislation the term "statutory trust" to the Business Regulation Article where MCALA is found but elected <u>not</u> to add it to MCALA (*Id.* at 55-56).  If Defendants were correct that the legislature had intended the term 'trust company' to mean 'statutory trust' it would have made this change in 2010 but did not which indicates the terms do not have the same meaning.

Here, the General Assembly intended to limit the application of the Code provisions relied upon by Defendants to apply only to the specific sections in which they are found, and it did so expressly. Contrarily, there is no such limitation in MCALA limiting its scope and definitions to simply credit card debt buyers or for even debt collection by litigation (including foreclosure litigation). As Judge Quirk of the Circuit Court for Montgomery County explained:

> By devoting an entire subtitle of the Corporations and Associations Article to foreign statutory trusts, the General Assembly demonstrated that it is capable of using that term explicitly. See Md. Cod. Ann., Corps. & Ass'ns § 12-901, et seq. If the General Assembly wished to exclude "foreign statutory trusts" that bring foreclosure actions from MCALA, it could have done so just as explicitly. That it did not demonstrates that the legislature intended to treat foreign statutory trusts, like Ventures...different for the purposes of MCALA and Corps. & Ass'ns § 12-901(a), respectfully. In conclusion, the General Assembly intended to subject entities like Ventures...to MCALA's license requirements, yet exempt such entities from the registration requirements in Corps. & Ass'ns § 12-902(a).

Defendants' Exhibit 20 (ECF 18-21), *Sharma* Opinion at 5.

Instead, the Legislature crafted deliberately broad language to encompass "a person who engages *directly or indirectly* in the business of...collecting a consumer claim the person owns, if the claim was in default when the person acquired it." BUS. REG. §7-101(c) (emphasis added).[17] The inclusion of the words "directly or indirectly" is meant to broaden the scope of the MCALA to entities like LSF9 which seeks to collect consumer claims through others, like Caliber in this case, or indirectly through *in rem* collection proceedings like foreclosure.

Defendants' suggestion that collection by foreclosure has never been contemplated to be governed by MCALA before (Motion at 12-17) is also without merit. *See e.g. Ademiluyi*, 929 F. Supp. 2d at 521 (holding a debt purchaser "in the business of purchasing mortgages in default to

---

[17] And 'persons' under MCALA include "other entities" such as statutory trusts. BUS. REG. § 1-101(g).

collect on debts through litigation or other means" is governed by MCALA"); *Peterson v. Servis One, Inc.*, No. CV WMN-15-3151, 2016 WL 215921, at *3 (D. Md. Jan. 19, 2016)(recognizing that a violation of MCALA in the context of collection by foreclosure "may give rise to a cause of action under the FDCPA, the MDCPA and the MCPA"). *See also Wilcox, Marvastian*, *Sharma*, *and In re: National Payment Relief* discussed *supra*, at pages 4-6, (all applying MCALA in the debt collection by foreclosure context). Further, Defendants fail to acknowledge to the Court their own representations to the state courts that their attempted and actual efforts to collect by utilizing the *in rem* foreclosure procedure does result in the collection of money related to the loans subject to this action. P. Jud. Not (ECF 21-14 through 21-15).

Defendants also claim that the Legislature created other 'more adequate' protections for homeowners in foreclosure by enactment of REAL PROP. § 7-105.1. Motion at 20. "It is [true] that the legislative process relating to mortgage foreclosures of the last several years has been designed to slow down the mortgage foreclosure practices to limit the abuses of past years and to provide additional protections to homeowners." *Maddox v. Cohn*, 36 A.3d 426, 434 (2012). However, the Legislature expressly reserved that these changes did not prevent a homeowner, consumer "from pursuing any other remedy or legal defense available to the [them]" (REAL PROP. § 7-105.1(m)(3)), including raising claims that an unlicensed, so-called professional required to be licensed may not utilize or acquire the jurisdiction of the Maryland courts while unlicensed. *Berman*, 265 A.2d at 761.

To accept Defendants' premise, that an application of the MCALA requirements to LSF9 is unnecessary, would be tantamount to suggesting that REAL PROP. § 7-105.1(m)(3) and MCALA itself was superfluous and under the cannons of statutory construction such a construction would be impermissible. *Sadowski v. U.S. Postal Serv.*, 643 F. Supp. 2d 749, 755 (D. Md. 2009). Further,

the Legislature was aware of Maryland's long-standing case law from *Berman*, 265 A.2d at 761, that an unlicensed person is not entitled to the assistance of the Courts and did not abrogate that principle in MCALA or REAL PROP. § 7-105.1.   *Williams v. State*, 438 A.2d 1301, 1305 (1981)("The General Assembly is presumed to be aware of [the Court of Appeals'] interpretation[s]…and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation").

For these reasons Defendants' reliance upon the Maryland Statutory Trust Act as well as REAL PROP. § 7-105.1 to over-ride the requirements of MCALA should be disregarded.  To suggest otherwise would be to impermissibly ignore the Legislature's clear limits and scope placed upon the Maryland Statutory Trust Act, REAL PROP. § 7-105.1, and render those limits and actual scope a nullity.  CORPS. & ASS'NS § 1-102(c), § 1-102(d)(1), § 12-908, and § 12-909.  *Scarfield v. Muntjan*, 119 A.3d 745, 752 (2015).

### E.   The Status of LSF9's Trustee May Not Act as a Shield for LSF9's Responsibilities Under State Law

Defendants ask the Court to assume that because LSF9's trustee is a national bank, LSF9 is exempt from MCALA (and other state law requirements).  Motion at 6-7, 22-23.  This contention is not supported by the well-pled facts of the Plaintiffs' actual claims.  AC at ¶¶ 8.b (LSF9's trustee has no management responsibility for LSF9 and does not govern its affairs whatsoever).   In addition, the argument is contrary to the view of U.S. Bank Trust, NA's regulator charged to review federal banks.  The Office of the Comptroller of Currency[18] has explained, U.S. Bank Trust, NA's

---

[18]     The OCC's interpretations are entitled to *Chevron* deference.  *See Monroe Retail, Inc. v. Charter One Bank, N.A.*, 624 F. Supp. 2d 677, 686 (N.D. Ohio 2007), aff'd sub nom. *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274 (6th Cir. 2009) ("opinion letters submitted by the Office of the Comptroller of Currency ("OCC")...are entitled to [the] Court's deference").

"authority to act as [a] trustee[] under federal law **does not insulate the asset[] the Bank[] hold[s] in trust for the benefit of investors from state law requirements** otherwise applicable to those assets." OCC Letter dated January 14, 2005 regarding *Wells Fargo v. Harris* and *Bank One v. Feinstein* P. Jud. Not. (ECF 21-4) (emphasis added). *Compare Ross v. Deutsche Bank Nat. Trust Co.*, 933 F. Supp. 2d 225, 233 (D. Mass. 2013) (recognizing that a federal bank is not entitled to claim federal preemption when merely acting as a trustee for a mortgage asset owed by others); *W. Virginia v. CashCall, Inc.*, 605 F. Supp. 2d 781(S.D.W. Va. 2009)(disregarding federal preemption argument by non-bank involved in an "'alleged 'rent-a-bank' or 'rent-a-charter' scheme designed to avoid" state law).

Hereto, just like a lawyer may not lend his license to practice law to a non-lawyer, U.S. Bank Trust's status may not be lent to shield LSF9 from state law requirements including licensure under MCALA.[19]  Even if the Court wished to believe so, the conclusion could only be determined by facts not presently before the Court and therefore cannot be a basis for dismissal.

> ### F.    The Declaratory Relief Sought by the Plaintiffs is Not Moot Since LSF9 is Not Licensed as a Collection Agency But Continues to Collect and Attempt to Collect While Unlicensed as a Collection Agency

Defendants ask for the Court to dismiss Plaintiffs' declaratory relief and in doing so rely upon *Winemiller*, *Bradshaw*, and *Hauk*.  Motion at 23-24.  In these prior cases before this Court addressing the unlicensed collection activities of other entities, the defendants became licensed subsequent to the filing of the lawsuit so the declaratory relief sought in the plaintiffs' complaints

---

[19]    Defendants correctly note that MCALA exempts mortgage lenders.  Motion at 18-21.  However, Defendants' own authority--1990 Sunset Report (ECF. 18-23) at Page 14--recognizes that the Licensing Board "has no authority over licensed lenders" who are licensed by another agency other than the Licensing Board.  In this case LSF9 is not exempt as a mortgage lender from MCALA's licensing requirements (AC at ¶ 27.a,).  Plaintiffs would concede if LSF9 were licensed as a mortgage lender it might be exempt from MCALA's licensing requirement.

had become legally moot. *Hauk,* 749 F. Supp. 2d at 369 ("much of [plaintiffs] request for equitable relief is now moot. Subsequent to the filing of this lawsuit, [the unlicensed collection agency] applied for and received a license as a debt collector from the Maryland DLLR. Therefore, the request for an injunction barring [it] from conducting debt collection activities until it receives a license is moot"); *Bradshaw,* 765 F. Supp. 2d at 733 ("because Hilco applied for, and received a license in late 2010, Plaintiffs request for an injunction barring Hilco from conducting debt collection activities is moot"); *Ademiluyi,* 929 F. Supp. 2d at 507 at FN 3 ("plaintiff has conceded that Count I is moot, in light of the State of Maryland's issuance of a mortgage lender license to PennyMac Holdings. *See* Plaintiff's Second Motion at 5 n. 1. This, too, is consistent with *Hauk. See Hauk,* 749 F.Supp.2d at 369 (finding claim for declaratory and injunctive relief moot where defendant similarly obtained mortgage lender license after filing of complaint). Therefore, I will dismiss Count I as moot").

Unlike the earlier cases, LSF9 has not become licensed as a collection agency and it is not licensed as a mortgage lender; however, LSF9 has continued to collect and attempt to collect, directly and indirectly. AC at ¶ 64; Ex. 3 to the AC (ECF. 8-3)(identifying several hundred persons LSF9 is continuing to collect or attempt to collect from). Plaintiffs have identified the basis for their declaratory relief pursuant to 28 U.S.C.A. § 2201, Fed. R. Civ. P. 57, Fed. R. Civ. P. 23, and MD. CODE ANN., CTS. & JUD PROC. § 3-409. AC at ¶ 84. For these reasons, Defendants' request for dismissal of Plaintiffs' declaratory claims should be denied. *Compare Stone v. Wayric Services Inc.*, Case No. 1:10-cv-00484 (D.C. Md.)(Order dated July 28, 2010)(ECF. 38)(P. Jud. Not. [ECF 21-8]) at Page 3 ("Nothing in the text implies that the statute precludes a suit for declaratory relief or that an alleged violation of the statute cannot form the basis of a consumer protection suit"); *Fangman v. Genuine Title, LLC*, 136 A.3d 772, 797 (2016)(recognizing that a statute like MCALA

without a private right of action "in no way deprives [consumer plaintiffs] of a remedy altogether" such as through other statutes like those presented before the Court in this action).

### G. Professional Purchasers of Defaulted, Consumer Debts Who Directly and Indirectly Collect on Those Debts, including by Litigation, are Debt Collectors Under the FDCPA

Defendants raise disputed facts and claim that LSF9, as a professional assignee of defaulted consumer debts, is not a debt collector under the FDCPA. Motion at Pages 24 to 26. Respectfully, the well pled facts of the Amended Complaint suggest the basis for the Court to conclude LSF9 does qualify as a debt collector under the FDCPA and debt collection is its primary and principal, if not entire, business. *See e.g.* AC at ¶ 8.c. ("as part of is regular business, LSF9 acquires defaulted debts...for pennies on the dollar"), ¶ 44 ("A primary portion of LSF9's business is to acquire non-performing, defaulted loans for sums less than what is claimed due on each loan and proceed to collect directly and indirectly on the loans"), and ¶ 55 (describing LSF9's "regular and on-going" collection practices including litigation).

Defendants' chief authority for this theory is the Fourth Circuit's recent published decision in *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 134 (4th Cir. 2016). In *Henson*, the assignee creditor was found not to be qualified as a debt collector under the FDCPA and the court reasoned, the FDCPA "defines a debt collector as (1) a person whose *principal purpose* is to collect debts; (2) a person who *regularly* collects debts *owed to another;* or (3) a person who collects *its own debts,* using *a name other than its own* as if it were a debt collector." *Id.* at 136.

The debts at issue in *Henson* were unlike those subject to this action. *Henson* did <u>not</u> involve a portfolio "purchase of defaulted debt for pennies on the dollar…[instead it] consisted of purchasing a portfolio of auto loan accounts valued at over $3 billion, **most of which were not in default**." Ricky HENSON, et al., Plaintiffs-Appellants, v. SANTANDER CONSUMER USA,

INC., Defendant-Appellee, Ncb Management Services, Inc. and Commercial Recovery Systems, Inc., Defendants., 2015 WL 4932610 (C.A.4), 56 (citing to and asking the Fourth Circuit to take judicial notice of Santander's publically filed prospectus before the SEC)(emphasis added).  Here, the well pled (and true) facts before the Court show that LSF9 acquired the Plaintiffs' consumer debts for pennies on the dollar (AC at ¶¶ 8.c, 22, 31-32; Ex. 2 to the AC [ECF. 8-2]) as part of its primary and principal business purpose to acquire debts in default for pennies on the dollar and thereafter attempt to collect on the debts (AC at ¶¶ 8.c, 44 & 55).  In the prior *Altenburg Action*, the Defendants' agents stipulated to a fact about LSF9's acquisition of Mr. Altenburg's debt which further distinguishes *Henson* from this case.  Ex. 2 to the AC (ECF. 8-3).

Unlike the creditor in *Henson* who "was [simply] a consumer finance company" (*Henson*, 817 F.3d at 137), here the principal and primary purpose of LSF9 is the acquisition of and collection of defaulted consumer debts on behalf of its associated hedge fund's clients and investors.  AC at ¶¶ 8, 44-45.[20]  The well-pled facts show that Caliber and LSF9 are primarily in the **non-performing loan** business (AC at ¶¶ 8, 16-17, 44-45) and are not even offering sustaining loan modifications but at best, as a matter of practice, offering partial, short-term forbearance agreements with no long-term prospect of a sustainable modifications of making a non-performing mortgage sustainable through the mortgage term (AC at ¶ 49).  As the state court explained in the prior *Altenburg Action*

> There's been zero evidence in the court file to suggest that LSF9 purchased it with an eye towards rehabbing the residence or anything else like that.  No, they purchased it…for the same reasons that [a professional debt purchaser such as] Pasadena Receivables purchases credit card debt.  They did it as an investment.  They did is as a business opportunity.

---

[20]     *Henson* relied heavily on *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1311 (11th Cir. 2015) which concerned not a professional debt purchaser but a creditor bank "where 'the collection of any debts' [was] not 'the principal purpose' of the bank's business."

P. Jud. Not. (ECF. 21-13) at Page 40, Lines 8-15.

> I don't see a whole lot of difference between what LSF9 did in this case and what Pasadena Receivables does and what the collection agency company in the *Finch* case does. They had it and they wanted to foreclose.

*Id.* at Page 73, Lines 5-10.

In sum, the well pled facts before the Court show LSF9 is a professional debt purchaser[21] and collector and this to whom the FDCPA was intended to apply. *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 at FN3 (11th Cir. 2014), cert. denied, 135 S. Ct. 1844, 191 L. Ed. 2d 724 (2015)("It is worth noting that the FDCPA does not apply to all creditors; it applies only to professional debt-collectors like LVNV")(LVNV is the same consumer, debt purchaser identified by the state court from the *Finch* case discussed *supra* who acquires like LSF9 defaulted consumer debts for pennies on the dollar); *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001)("The Fair Debt Collection Practices Act establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection").

Further, it should be noted that whether LSF9 is a debt collector or not under the FDCPA is immaterial. Plaintiffs have also alleged that Caliber is a debt collector under the FDCPA (AC at ¶¶ 2, 9, 16, 21, 25, 37-39, 43, 46-47, 49, 54, 87)[22] and that Caliber is jointly liable, along with

---

[21] LSF9 also has a duty to supervise its affiliated debt collector Caliber and may be vicariously liable for Caliber's FDCPA violations as well. *Compare Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016)("Asset Acceptance is itself a debt collector, so under the logic of *Pollice* and *Fox*, it may be held liable for [it's collector's] violations of the [FDCPA] in the course of activities undertaken on its behalf").

[22] Defendant's Motion does not appear to seek dismissal of Plaintiff's FDCPA claims against Caliber and even under *Henson*, the Fourth Circuit recognized that debt servicers like Caliber are debt collectors under the FDCPA. *Moss v. Ditech Fin., LLC*, No. PWG-15-2065, 2016 WL 4077719, at *4 (D. Md. Aug. 1, 2016)(recognizing that a mortgage servicer "would qualify as a debt collector if the loan were in default when [it] began servicing it")(citing *Henson* and 15 U.S.C. § 1692a"); *Lynn v. Selene Fin., LP*, No. 7:15-CV-159-FL, 2016 WL 5231832, at *4 (E.D.N.C. Aug. 25, 2016), report and recommendation adopted, No.

LSF9, to the Plaintiffs and the Class under the FDCPA (AC at ¶¶ 86-92).  Plaintiffs and the Class would not likely be entitled to a double recovery from both LSF9 and Caliber of the statutory damages sought in this action.  15 U.S.C.A. § 1692k.

> **H.     The Defendants' Acts to Conceal from Ms. Wood LSF9's Illegal Status Tolls Any FDCPA Statute of Limitations; Alternatively, Certain of Ms. Wood's FDCPA Claims Accrued Less Than a Year before the Commencement of this Action and Are Not Time-Barred**

Defendants ask the Court to dismiss Ms. Wood's FDCPA claims on the basis of that Act's one-year statute of limitations.  Motion at 26-27.  Wood's well-pled claims however, provide: "Because Alba, Caliber, SIMM, and LSF9 concealed from her that LSF9 was not licensed as a collection agency and as an unlicensed, so-called professional, LSF9 had no legal right to demand any sums, directly or indirectly, Wood did not know until a period of less than one year before the commencement of this action that LSF9 was acting illegally under Maryland and Federal law." AC at ¶ 41.  In addition, "[o]n or about January 28, 2016 Caliber wrote again to Wood and the IRS on behalf of LSF9 and represented that Wood owed it $122,620.21 related to the Wood Loan. Caliber intended that Wood rely upon this communication and Wood did do so and reported the information to her tax professional."  AC at ¶ 39.  Other, separate collection activity by Caliber on LSF9's behalf did occur more than year but less than three years before the commencement of this action.  AC at ¶¶ 35-38.  LSF9 and Caliber had affirmative duties to disclosed to Ms. Wood (and the putative class members) the true facts concerning LSF9's illegal status and not pursue action

---

7:15-CV-159-FL, 2016 WL 5173250 (E.D.N.C. Sept. 21, 2016)("where Plaintiffs have alleged that they were in default prior to Defendant becoming the servicer for their loan, construing the complaint in the light most favorable to Plaintiffs, Defendant does not meet the exemption to the definition of debt collector provided in 15 U.S.C. § 1692a(6)(F)(iii)").  Caliber's liability for pursuing collection actions on behalf of LSF9, who has no legal right to collect as an unlicensed collection agency, does not rest on LSF9's qualification as a debt collector under the FDCPA.

in the state courts while LSF9 was unlicensed.  AC at ¶ 53 (citing cases).  Yet neither Caliber nor

LSF9 fulfilled those duties.  AC at ¶ 41.

These well-pled facts support, at this stage of the proceedings, for the Court to apply the

principle of equitable tolling to certain of Ms. Wood's FDCPA claims that occurred more than a

year before the commencement of this action.

> Equitable tolling applies only in "those rare instances where—due to circumstances
> external to the [Plaintiffs'] own conduct—it would be unconscionable to enforce
> the limitation against the [Plaintiffs']." *Harris,* 209 F.3d at 330. To do so, Plaintiffs
> must show that "(1) the party pleading the statute of limitations fraudulently
> concealed facts that are the basis of the [Plaintiffs'] claim, and (2) the [Plaintiffs]
> failed to discover those facts within the statutory period, despite (3) the exercise of
> due diligence." *Supermarket of Marlinton Inc. v. Meadow Gold Dairies, Inc.,* 71
> F.3d 119, 122 (4th Cir.1995). In order to satisfy the first element of this test,
> Plaintiffs must present evidence of affirmative "acts of concealment [by
> Defendants]." *Id.* at 125 (internal citation omitted).

*Land v. Green Tree Servicing, LLC*, 140 F. Supp. 3d 539, 547 (D.S.C. 2015).  *Peckey v. Bank of*

*Am., N.A.*, No. CIV.A. RDB-14-433, 2015 WL 1622967, at *3 (D. Md. Apr. 10, 2015)(recognizing

that a consumer's FDCPA claim based on false credit reporting is tolled until "the debtor accesses

his credit report"); *Betskoff v. Cosby*, No. CIV. WDQ-12-3757, 2013 WL 4587634, at *3 (D. Md.

Aug. 27, 2013)("Equitable tolling may apply when 'the defendant has wrongfully deceived or

misled the plaintiff in order to conceal the existence of a cause of action.' *English v. Pabst Brewing*

*Co.,* 828 F.2d 1047, 1049 (4th Cir.1987)"); *Somin v. Total Cmty. Mgmt. Corp.,* 494 F.Supp.2d 153,

158–159 (E.D.N.Y.2007) (finding equitable tolling applies in FDCPA case).

If the Court declines to apply equitable tolling to certain of Ms. Wood's FDCPA claims

which occurred more than a year before the commencement of this action, her FDCPA claim

remained viable for those separate collection actions and misrepresentations, that there was a right

to collect from Ms. Wood on behalf of an unlicensed collection agency, occurred less than a year

before the commencement of this action.  AC at ¶ 38.  *Akalwadi v. Risk Mgmt. Alternatives, Inc.,*

336 F. Supp. 2d 492, 501 (D. Md. 2004)(granting summary judgment as to false reporting on credit reports obtained by the plaintiff more than a year before the commencement of the action but denying summary judgment under plaintiffs' FDCPA claims relating to false reporting that occurred less than a year before the commencement of the action); *Purnell v. Arrow Fin. Servs., LLC*, No. 05-CV-73384-DT, 2007 WL 421828, at *4 (E.D. Mich. Feb. 2, 2007)("Again, the relevant consideration is the date of the alleged violation by the debt collector. In this case, several violations occurred well within the period of limitations in the form of communications that failed "to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Further, after the filing of this suit, Defendant failed in October 2005 to note in a confirmation form to Equifax that the debt is in fact disputed. Under the circumstances, the stipulated facts before the court do not raise a viable statute of limitations defense for Defendant").

For these reasons, Ms. Wood's FDCPA claims are timely or should otherwise be permitted to proceed at this stage.

### I.    Res-Judicata and the *Rooker-Feldman* Doctrine Do Not Bar Plaintiffs' Claims

Defendants also ask the Court to dismiss Ms. Wood's claims on the basis of res judicata (Motion at 27-29) and dismiss both Ms. Wood's and Mr. Altenburg's claims on the basis of *Rooker-Feldman* (Motion at 29-31) in light of the prior foreclosure actions brought against each of them.  However, these arguments are red herrings and there are no set of facts available or even before the Court to support the conclusions suggested.

Defendants fail to acknowledge to the Court that Plaintiffs here are <u>not</u> seeking whatsoever to attack or void any foreclosure judgments entered by the state courts.  *See* AC *in passim*.  Rather, the AC concerns (i) declaratory relief related the Defendant's present and on-going collection activity and (ii) liability and damages available under federal and state law legal claims.  AC at ¶¶

83-100. Notwithstanding the actual claims before the Court, the Fourth Circuit has explained an *in rem* foreclosure proceeding does not establish "preclusive effect" unless "the mortgagor voluntarily appears and raises objections." *Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 644–45 (4th Cir. 2011). *See also Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 801 (D. Md. 2013)(even where the borrower merely participates in foreclosure mediation in the state court there is no preclusive effect).

In accordance to Defendants' own exhibit presented to the Court (ECF. 18-12), Ms. Wood did not appear in her prior foreclosure action or object whatsoever (which is a true fact); therefore neither res judicata nor *Rooker-Feldman* preclude her claims in this action. *Jones*, 444 F. App'x at 644–45; *Currie*, 950 F. Supp. 2d at 801; *Mohammed v. Wells Fargo N.A.*, No. 3:15-CV-00403, 2016 WL 446633, at *5 (M.D. Pa. Jan. 11, 2016), report and recommendation adopted, No. 3:CV-15-403, 2016 WL 452143 (M.D. Pa. Feb. 4, 2016)(applying Rooker-Feldman to a mortgagor who "received and availed himself of the opportunity to contest the foreclosure proceedings").

Finally, as discussed *supra* (*see* § IV. A-B *supra* at Pages 13-17), Mr. Altenburg was not the loser in the prior *Altenburg Action*. Therefore, the *Rooker-Feldman* Doctrine does not apply to his claims. *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006)("the *Rooker–Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself").

**J.    There are No Novel Claims or Issues Presented in this Action Based Upon the Disputed Facts for the Court to Justify Certification of Questions to the Court of Appeals at this Time**

Apparently not wishing to litigate in this Court, which has routinely considered similar cases and issues as presented herein (*see* § IV. A-B *supra* at Pages 13-17), Defendants ask the Court alternatively to certify certain questions to the Court of Appeals which rely on their disputed

view of the facts before the Court.  Motion at 32-35.  Respectfully, the Court should exercise its discretion on this issue and decline Defendants' request since: (i) the reported case law from the Court of Special Appeals[23] has firmly established the legal issues before this Court and the Court of Appeals has indicated no intention to review that case law (despite multiple requests that it do so); and (ii) since no discovery has occurred, Defendants' disputed view of the facts before the Court in Plaintiffs' would be premature to form the basis of the proposed questions, even if appropriate, for the Court to certify any questions to the Court of Appeals.

Certification should not be invoked "absent genuinely unsettled matters of state law." *Arrington v. Colleen, Inc.*, 2001 WL 34117735 (D. Md. 2001), quoting *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1247 (5th Cir. 1997). A matter is not "genuinely unsettled" simply because of the "absence of a definitive answer from the state supreme court on a particular question." *Id.* "When there exists ample precedent to guide federal court adjudication, the court must decide the case as would a state intermediate appellate court." *Id.*, citing *Transcon. Gas Pipeline Corp. v. Transp. Ins. Co.*, 958 F.2d 622, 623 (5th Cir. 1992). "When this guidance is available, the federal court should decide the case before it rather than staying and prolonging the proceedings." *Id.* (emphasis in original).

As to the questions proposed by the Defendants, there is nothing unsettled or overly complicated for the Court to consider.  The Defendants' first proposed question, "Does MCALA apply to foreign statutory trusts, such as LSF9 Master Participation Trust," is a simple straightforward statutory analysis of MCALA based on how LSF9 is organized and the state court's ruling on the subject.  *See* §§ II.A Pages 2-3 and IV.A-E *supra* at Pages 13 to 24. Further,

---

[23]     *Archers Glen Partners, Inc. v. Garner*, 933 A.2d 405, 424 (2007), aff'd, 949 A.2d 639 (2008)(a reported decision of the Court of Special Appeals is binding authority).

a majority of judges on the Court of Special Appeals have voted to publish *Finch*, *Jason*, *Gordon*, and *Mostofi* which all confirm the legal analysis previously published by this Court in *Bradshaw* that MCALA is clear and unambiguous on its face.[24]   Had the Legislature intended to exclude statutory trusts from the scope of MCALA it could have done so but did not.  *See* argument *supra* at Pages 19-24.  Conversely, the Legislature expressly stated when it enacted the Corps. & Ass'ns § 12-909 which requires that, "[b]y doing intrastate, interstate, or foreign business in this State, a foreign statutory trust assents to the laws of this State."  MCALA is one of those laws and there is no need to answer the proposed question which the Legislature clearly stated in the Maryland Statutory Trust Act itself—the same statute Defendants selectively rely upon in their Motion.  *See* Motion at 10.

As to the second proposed question, i.e. "Does MCALA apply to foreclosure proceedings pursued by the trustee or servicer of a mortgage investment trust," the Defendants simply reframe an off repeated argument that MCALA was not intended to include 'passive' debt collection.  This Court, the state courts, and administrative agency charged with enforcement of MCALA have routinely rejected the notion that a collection agency may collect indirectly through another. *Ademiluyi*, 929 F. Supp. 2d at 524 (a mortgage debt purchaser of defaulted consumer notes "'does business as a collection agency,' both when it engages in mortgage foreclosure activity and when it retains third parties to service debt it purchases in default").  *See also Bradshaw,* 765 F.Supp.2d at 726–27; *Hauk,* 749 F.Supp.2d at 366–67; *Winemiller,* 2011 WL 1457749 at *4. Furthermore, this Court noted in *Winemiller,* the "MCALA does not distinguish between collection agencies

---

[24]     The only ambiguity announced by any of these cases in *Gordon* was whether a "credit insurance company" at the time the consumer claim was originated could later be considered a collection agency under MCALA.  This matter does not involve a credit insurance company and there is nothing before this Court to show LSF9 had any interest in the subject loans at the time they were originated.  *Gordon* creates no uncertainly for the facts in this case as already determined by the Circuit Court for Howard County.

34

that use different mechanisms to collect debt." 2011 WL 1457749 at *4. Instead, "[i]t targets all persons and entities that do business as collection agencies." *Id*.

Although Defendants may believe the issues detailed in their alternative certification request are important to them and their purported defenses, such desires are not enough to warrant certification. The questions are not "genuinely unsettled," as there is ample and consistent precedent in the federal courts and intermediate state courts of appeal upon which this Court may decide the merits of plaintiff's state law related claims so there is no need to exercise the Court's discretion to certify the proposed questions. *Lynn,* 953 F. Supp. 2d at 621.

## V.   CONCLUSION

WHEREFORE based on the foregoing Plaintiffs request that the Motion be denied. Alternatively, if the Court believes Plaintiffs have pled any deficiencies, they request leave to amend pursuant to Fed. R. Civ. 15.

Respectfully submitted,

*/s/ Phillip Robinson*
Phillip Robinson, Attorney
Bar Number 27824
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304
Email: phillip@marylandconsumer.com
*Counsel for the Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to all parties and counsel of record in this matter when filed with the Court's ECF system.

*/s/ Phillip Robinson*
Phillip Robinson